**Gary Leland COTTON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20986.**

United States Court of Appeals
Ninth Circuit.

Jan. 23, 1967.

388

George M. Dickerson, of Dickerson & Miles, Las Vegas, Nev., for appellant.

Joseph L. Ward, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Cotton was found guilty of violating 18 U.S.C. § 2312, by transporting a stolen motor vehicle, a 1963 Chevrolet, identification No. 31269J174220, from Columbia Falls, Montana to Las Vegas, Nevada, knowing that it was stolen. Before his trial, he made a motion to suppress certain evidence under Rule 41(e), F.R.Crim.P., which was denied.

The facts developed at the hearing of the motion, stated most favorably to the government, are these: At 1:30 A.M. on November 2, 1965 Officer Pearns of the Las Vegas Police Department was driving in an alley, with the headlights of his car turned off, and saw another vehicle pull into the alley, turn off its lights, proceed up the alley and park. Cotton got out of the car, walked about 50 yards up the alley and entered a used car lot. The officer stopped his vehicle near the entrance to the used car lot, left the door slightly ajar so that the police dog that accompanied him could be summoned, entered the lot and accosted Cotton. He asked Cotton what he was doing and the response was that he was just looking around. He asked Cotton if he knew the owner of the lot or had any business there and the response again was "No, I am just looking around." He asked Cotton if he knew that the establishment would be closed at that time of day and Cotton said he did. He asked if the car parked in the alley was Cotton's and Cotton said "Yes." He asked Cotton why he had left his vehicle where he had left it and Cotton said "I don't know." He asked Cotton for identification and Cotton replied that he had none because he had lost his wallet. The officer did not at that time tell Cotton that he need not answer his questions, but Cotton's responses were not offered against him at his trial.

The officer did not arrest Cotton, but did ask him to walk over to Cotton's car, and Cotton did. The officer asked Cotton if he would mind if the officer looked into the car, and Cotton said no. The officer did not, however, advise Cotton that he could refuse. The officer entered the car and searched it, looking for a registration and for weapons, but found none. He removed nothing. He asked

Cotton if he had a registration and Cotton pulled from his pocket a "title" to the vehicle. This is a Montana "Certificate of Title of a Motor Vehicle" and identifies the car as "1963 Chevrolet 1269 Sedan 3520 31269J174220" and shows the registered owners as "Ernest Helseth and Mrs. Ernest Helseth, Route 1B, Columbia. Falls, Montana." Cotton said that he was Helseth.

The officer again asked Cotton if he had a registration. Cotton said that it was in the car, got into the car, opened the glove box and produced the registration, which was also in the name of Helseth. Neither the registration nor the fact that Cotton produced it were used against Cotton at his trial. The officer then told Cotton that he was under arrest for "disturbing private places." This was pursuant to a Las Vegas ordinance. At that point he handcuffed Cotton and searched him for a weapon.

The officer summoned another police vehicle by radio for the purpose of transporting Cotton to the police station, there being a police department rule against transporting anyone in a car in which there was a police dog. Two officers arrived and took Cotton away. Officer Pearns remained until a tow truck came to take the Cotton car to the police impound. He made out a "tow slip" on which he inserted the make, model, serial number 31269J174220, and the Montana license number 7-653. He obtained the serial number by opening the left front door of the car and looking at the door post, which became visible when the door was open. The officer testified that he obtained the information that he put on the slip because "after arresting the man, I am responsible for the vehicle and the property in it." The tow slip also shows the following: "Charges, Prowling Pvt.", and "Hold for safekeeping. Hold proof of ownership."

Officers Jenkins and Wagner were the two policemen who took Cotton to the police station. It is the policy of the police department that all personal effects of a prisoner are taken into custody for safekeeping. When Cotton was booked, he was told to remove his personal belongings from his pockets. He produced, among other things, the "title" to the vehicle and certain receipts, one for a tire and rim that had been sold by Cotton in Missoula, Montana. The officers noticed the name Cotton on the receipts, and asked who Cotton was. (He had been booked under the name of Helseth.) Cotton said that he had picked up a man named Cotton as a hitchhiker in Arco, Idaho. The police pointed out that the receipt was given in Missoula, Montana, and that they thought that Cotton was lying. Cotton then said, "Yes, I am Gary Cotton. Call the Marshal, the vehicle is stolen." The officers asked where he got the car and he said from a farm in Kalispell, Montana. At no time did the officers tell Cotton that he need not answer their questions, or that what he said could be used against him, or that he was entitled to an attorney, or to consult an attorney before he talked to them, or that if he could not afford an attorney one would be furnished for him, or that in that case, they would not ask any further questions until such an attorney was obtained. Cotton did not ask for an attorney. After Cotton made the foregoing admission, he was asked if he would like to make a statement and he said not at that time. The police then told him that he need not make a statement. Cotton's statements to the officers were not used against him at his trial. In the morning, Cotton was brought before a magistrate on the prowling charge, pleaded guilty, and was given a ten-day jail sentence.

On the same morning F.B.I. Agent Howerton was called by the Las Vegas police. He went to the police impound lot and looked at the car. He had no warrant. He took the license number and opened the front door of the car on the driver's side and got the identification number 31269J174220 from the small metal plate that is fastened to the door post. He opened the glove compartment, but took no papers from it, and he found a wallet under the front seat which he ex-

amined and found in it a driver's license issued to Gary Cotton. He opened the trunk of the car. He took nothing from the car. He returned to his office and sent a teletype inquiry to the Butte, Montana, office of the F.B.I. as to whether the car had been reported stolen. In his teletype he used both the license number and the identification number.

Before receiving a reply from the Montana F.B.I. office, the Agent went to the Las Vegas Police Department where he looked at the reports of the arresting officers and the receipts that had been taken from Cotton's person, and had an interview with Cotton. He had the receipts in his possession and referred to them when he talked to Cotton. He was accompanied by F.B.I. Agent Casey, but it was Howerton who conducted the interview. Both agents identified themselves, and Howerton advised Cotton that he had a right to remain silent, that anything he said could be used against him in a court of law, that he had a right to consult an attorney or anyone else he desired either prior to the interview or at any time he desired, and that no promises would be made to him nor would any duress be used. Cotton stated that he understood his rights. He then gave Howerton what amounted to a full confession. The interview lasted 48 minutes.

On this appeal Cotton maintains that the examination of the vehicle by Officer Pearns while it was in the alley near the used car lot was an unlawful search, that the examination both by the Las Vegas police and by the F.B.I. of the receipts found on Cotton's person was an unlawful search, that the information that was obtained by use of the receipts was "fruit of the poisonous tree," that the examination of the vehicle in the police impound lot by the F.B.I. was an unlawful search, and that the use of the information thus obtained, i. e., the serial number of the vehicle and the license number, resulted in the discovery that the automobile had been reported stolen by the owner Helseth, thus rendering such discovery also "fruit of the poison-

ous tree." He also maintains that the information obtained by the Las Vegas police from Cotton was obtained in violation of his rights under the Fifth and Sixth Amendments and that the information subsequently obtained by the F.B.I. agents would not have been given them if Cotton had not already told the Las Vegas police that the car was stolen and that therefore the statement to the F.B.I. agents was "fruit of the poisonous tree." He argues further that Rule 41(e) F.R.Crim.P. violates his rights under the Fifth Amendment because it requires that he make a showing that he has standing to complain of the search of his automobile. His final two contentions are that the interview by the F.B.I. agents should have been suppressed because it violated the McNabb-Mallory Rule and that the trial judge improperly instructed the jury.

■■ Before turning to these questions we consider the government's contention that Cotton had no standing to move to suppress evidence resulting from the search of the vehicle because he did not have lawful possession of the vehicle. We hold that he did have standing. In Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the Supreme Court escaped from the dilemma posed by Judge Learned Hand in Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, by alternative holdings. Jones was charged with violation of the narcotics laws (26 U.S.C. § 4704(a) and 21 U.S.C. § 174). Narcotics were found in a search of an apartment which he was occupying with the permission of a friend. The first ground upon which standing was established was that "[t]he possession on the basis of which petitioner is to be and was convicted suffices to give him standing * * *." (362 U.S. at 264, 80 S.Ct. at 732.) This refers to possession of the narcotics, which were contraband. Here, Cotton was in possession of a stolen vehicle, and it is said that proof of possession in state A of a car stolen in state B permits the jury to infer that the possessor knew it was stolen. (See Reese v. United States, 10

Cir., 1965, 341 F.2d 90, 92; Morandy v. United States, 9 Cir., 1948, 170 F.2d 5, 6.) Thus, Cotton says, his case stands upon the first ground, his possession of the car being a basis on which he was to be, and was, convicted. We do not decide this question, preferring to rest upon the second ground.

■ The second ground upon which standing was established was that Jones had a sufficient interest in the premises searched. Jones' interest was possessory, and the court declined to allow decision to turn upon nice distinctions as to the nature of his possession, which appears to have been that of a guest or invitee. The court did, however, say that its ruling "would * * * not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." (362 U.S. at 267, 80 S.Ct. at 734.) The government relies upon this language as denying standing because Cotton's presence in the car was wrongful. We think that this goes too far. No doubt the Supreme Court would deny standing to a trespasser or a burglar who has entered another's home and is there when the home is searched. But even a trespasser, if he has also taken actual possession of premises, acquires possessory rights against all the world except the true owner. Thus a squatter upon the property of another, who builds a house there and lives there, has such rights, and we think that the Supreme Court would not deny them as against the lawless officer who breaks, enters and searches without a warrant.

■■ It has been repeatedly held, in substance, that an automobile has the status of a house, so far as the protection of the Fourth Amendment is concerned, subject to certain limitations arising from its mobility. See Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Gambino v. United States, 1927, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; State of Montana v. Tomich, 9 Cir., 1964, 332 F.2d 987. And the rule that one whose possession is wrongful is entitled to protection against all who do not have a paramount right to possession is equally applicable to chattels, such as a car. Thus even a thief of a chattel can acquire title to it by adverse possession. Brown, Personal Property, 1955 ed., § 17 at p. 38. The same rule applies to a finder, id., § 11 at p. 23, even though, if he have the requisite intent, his possession may be larcenous, id. § 15, at pp. 30–31. The car was not contraband. We do not intimate that the police may not, if they have probable cause, take a stolen car from the thief and return it to its owner. That question is not before us. The question here is as to the standing of the thief who had possession of it and claimed it as his own to object to a search of the car. We hold that he has such standing. To that extent, we are in agreement with the decision of the Tenth Circuit in Simpson v. United States, 1965, 346 F.2d 291.

■ When Officer Pearns searched the car, all of the information that he had, whatever his suspicions may have been, indicated that it was Cotton's car. When Agent Howerton examined it, he thought that it had been stolen, but he knew that Cotton had had possession of it and claimed it as his. In fact both searches were conducted to ascertain the ownership of the car; and if the searches were unlawful, they cannot be justified in effect, because they turned up the fact that the car did not belong to the one who now seeks to suppress any evidence found.

We need not consider the merit of Cotton's claim that the search of the car by Officer Pearns in Cotton's presence was unlawful. Nothing was then discovered that was used against Cotton at his trial.

■■ The inquiries made by Officer Pearns were proper, and the information obtained was lawfully obtained. We have

previously remarked that a local police officer is "in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so." Frye v. United States, 9 Cir., 1963, 315 F.2d 491, 494. We also said that that case involved "an example of excellent police work by a local officer, not subject to any constitutional attack." What we said in *Frye* is equally applicable to what Officer Pearns did here. He was confronted with a set of highly suspicious circumstances, and it was entirely proper for him to ask Cotton what he was doing there and for identification.

■ It was equally proper for him to inquire about the car. Both the preliminary interview with Cotton and the examination relative to the car were made primarily for identification purposes. Cotton himself, masquerading as the owner, and in an endeavor to identify himself, voluntarily produced the Montana "title" and the registration, both of which disclosed the basic information about the car and the name of its owner. The detention and interrogation of Cotton fully meet the standards recently applied by us in Gilbert v. United States, 9 Cir., 1966, 366 F.2d 923, 928; Wilson v. Porter, 9 Cir., 1966, 361 F.2d 412; and Lipton v. United States, 9 Cir., 1965, 348 F.2d 591. And the court below found that Cotton's statements and actions were voluntary. See United States v. Page, 9 Cir., 1962, 302 F.2d 81, 84, 85.

■ No contention is made that Cotton's arrest for prowling was not proper or that the impounding of the car violated any of Cotton's rights. Officer Pearns' check of the identification number on the door post, which involved opening the door, was not, we think, an unlawful search. Cotton having been validly arrested and taken to the police station, the officer would have been derelict in his duty if he had left the car unattended in a dark alley in the middle of the night. The police have as much a duty to protect the property of a suspect as they have to protect the property of the rest of us, and that is what they did in this case by towing the car to the police impound. They also had a duty to keep a record of the property that they had impounded so that it could be returned to the suspect or to its owner in due course. For reasons stated below, we do not think that the mere opening of the door of the car for the purpose of making such a record was, under the circumstances, a search, but if it was, the circumstances under which it was done make that search an entirely reasonable one. Cf. Boyden v. United States, 9 Cir., 1966, 363 F.2d 551. The Constitution prohibits only unreasonable searches and seizures. United States v. Rabinowitz, 1950, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653.

■ It was proper for the police to require Cotton to turn over to them, when he was booked, the property, including papers, that he had on his person. This is standard and necessary police practice. Charles v. United States, 9 Cir., 1960, 278 F.2d 386, 389. Compliance with this requirement does not subject the arrested person to an unlawful search where as here, he has been lawfully arrested. It is settled that police may search the person whom they arrest. Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777; United States v. Rabinowitz, 1950, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653. We cannot see that it makes any difference whether this is done on the spot or at the jail where he is booked. See Baskerville v. United States, 10 Cir., 1955, 227 F.2d 454. When Cotton was arrested, his person and his clothing and the contents of his pockets were lawfully taken into police custody. They could examine his body, Schmerber v. State of California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; Blackford v. United States, 9 Cir., 1957, 247 F.2d 745; Gilbert v. United States, supra, his clothing, Miller v. Eklund, 9 Cir., 1966, 364 F.2d 976, 978, and whatever he had on his person, see

Blackford v. United States, supra; Sandez v. United States, 9 Cir., 1956, 239 F.2d 239, 242–243; Charles v. United States, supra. If a lawful search or examination produces evidence of other crimes than that for which the prisoner was arrested, that is not something to which he can object. See Taglavore v. United States, 9 Cir., 1961, 291 F.2d 262, 265. Indeed, as we there said, it is proper for the police to look for just such evidence, so long as the arrest is not a mere pretext for doing so, as it was found to be in that case. See also Charles v. United States, supra. Furthermore, we know of no rule that says a police officer cannot look at papers when they are thus turned over to him. And if the papers were validly available to the state police, there is no reason that the F.B.I. could not make use of them in their investigation and prosecution.

■■■■ As to the statements made at the booking, Cotton argues that he would not have confessed to the F.B.I. had he not already admitted to the state police that the car was stolen. Since the full warning prescribed in Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, was not given by the state police, Cotton argues, the confession to the F.B.I. must be suppressed. We cannot agree. At the booking, the police were quite properly skeptical as to whether Cotton had correctly identified himself and they used the receipts that he had on his person in a further endeavor to establish his identity. They asked him nothing about whether he had stolen the car. It was Cotton who volunteered the information that he had stolen it. In any event, though a full Miranda-type warning was not given, this is no help to Cotton, as his trial took place on January 4 and 5, 1966. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

There is nothing in the record to indicate that Cotton did not voluntarily confess to the F.B.I. agents and the record does not require a finding that he would not have confessed at that time if he had not already made admissions to the state officers. When the F.B.I. agents interviewed Cotton they gave him the warning required by law, except for the advice now required by Miranda that if he could not afford a lawyer, one would be appointed for him.

■■■ Agent Howerton's examination of the car did not violate Cotton's constitutional rights. None of the contents of the car was used as evidence against Cotton at his trial; indeed, none was removed. None of the contents was used to obtain evidence against him. Only the serial number was thus used. If the agent had found any article or paper in the car, and such evidence had been used against Cotton at his trial or to discover other evidence, we would have a different case. See Preston v. United States, supra; State of Montana v. Tomich, supra; Westover v. United States, 9 Cir., 1965, 342 F.2d 684, reversed on other grounds, 384 U.S. 494, 495, 86 S.Ct. 1638, 16 L.Ed.2d 694. Here, only the serial number was used. We incline to agree with Judge Pickett of the Tenth Circuit in his dissent in Simpson v. United States, supra, 346 F.2d at 296–97, that it is not a search at all, under such circumstances as we have here, merely to check that number in order more positively to identify the car. This, we think, is quite different from looking for evidence that may have been placed in the car by its possessor. When Cotton acquired the car, the serial number and motor number came with it. And we would limit the right to check to those cases in which there is a legitimate reason to do so.

■■■ We have no doubt that here, even if the mere opening of the door to look at the number was a search, it was a reasonable one. The agent had reliable information from the Las Vegas police that the car was stolen, and it was entirely reasonable for him to check the car before sending out his inquiry. It is true that he could have obtained a warrant. And if he had found and used evidence

that Cotton might have placed in the car, we would hold that he should have done so. But we are of the opinion that, when a policeman or a federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the motor number, and that he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him. Compare Burge v. United States, 9 Cir., 1964, 333 F.2d 210. We express no opinion as to whether he can break into a car without a warrant if the car be locked.

Moreover, even if Agent Howerton's check of the serial number was an unlawful search, it does not follow that the evidence obtained from his inquiry to Montana should have been suppressed. It was not a search for him to look at the outside of the car, and thus to determine its make, model, color, and license number. As to the license number, we emphatically disagree with any contrary implications in the decision in Simpson v. United States, supra. It is not a search merely to look at an automobile, unless the opportunity to do so is obtained by an unlawful entry upon protected premises, which is not this case. What an officer can see without searching he can use as evidence. See Wilson v. Porter, 9 Cir., 1966, 361 F.2d 412, 416; Chapman v. United States, 9 Cir., 1965, 346 F.2d 383, 386–87; Davis v. United States, 9 Cir., 1964, 327 F.2d 301, 305; Busby v. United States, 9 Cir., 1961, 296 F.2d 328, 331.

The identification number of the car was already available from the "title" which Cotton had voluntarily produced, from the registration which he had voluntarily produced, and from the checking of the car incident to its being towed to the police impound, which had already occurred. The license number, the make of the car, the model of the car and its color could all be ascertained merely by looking at it without opening any doors. And there is nothing in the record indicating that the information obtained from these various sources did not produce the information that the car was stolen and the identity of its owner, even though the identification number obtained later was also used. Under these circumstances, we should not apply the "fruit of the poisonous tree" doctrine, as Cotton asks, to suppress all of the information, including the testimony of Helseth, that was obtained through use, with other information, of the identification number taken down when the car door was opened in the police impound by Agent Howerton. As we have previously said, suppression of the testimony of the complaining witness is not the proper manner in which to enforce the Fourth or Fifth or Sixth Amendments. See Gilbert v. United States, 9 Cir., 1966, 366 F.2d 923, at 944–45. As to this question, too, we must decline to follow Simpson v. United States, supra.

The McNabb-Mallory rule [1] has no application here. At the time of the interrogation Cotton had not yet been charged with any federal offense. The agents were seeking to determine whether to charge him. See Muldrow v. United States, 9 Cir., 1960, 281 F.2d 903.

Cotton is in no position to claim that Rule 41(e), F.R.Crim.P. violates the Fifth Amendment to the Constitution. Nothing that he said in his affidavit in support of his motion to suppress was used against him. Moreover, as we have already noted, Jones v. United States, supra, provides an escape from the dilemma posed by Judge Learned Hand, on which Cotton relies.

We find no error in the court's instructions. During the trial defense counsel, quite properly, several times renewed his motion to suppress. Some of these incidents occurred in the presence of the jury. Under these circumstances,

1. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

it was proper for the judge to give the following instruction:

"Defense counsel has heretofore made a motion to suppress documentary evidence and certain incriminatory statements on the grounds that the defendant's constitutional rights were not protected. This Court has previously ruled against the defendant as to these contentions. You are not to concern yourselves with the constitutional rights of the defendant or whether or not certain evidence should have been admitted. Whether or not the defendant's constitutional rights were observed and whether or not any evidence should have been admitted is a question for the Court alone."

Cotton argues that it was prejudicial to give this instruction because to do so prevented the jury from passing on the question of whether his confession was voluntary. This is incorrect. The court also gave the following instruction:

"A confession is an admission by the defendant of all the material facts constituting the crime charged. The very nature of a confession requires that the circumstances surrounding it be subjected to careful scrutiny in order to determine surely whether the confession was voluntarily and intentionally made. If the evidence in the case does not convince beyond a reasonable doubt that a confession was made voluntarily and intentionally, the jury should disregard it entirely. On the other hand, if the evidence in the case does show beyond a reasonable doubt that a confession was, in fact, voluntarily and intentionally made by a defendant, the jury should consider it as evidence in the case against the defendant who voluntarily and intentionally made the confession."

The portion of the court's instructions to which Cotton objects was designed to and we think properly did eliminate the possibility of confusion which existed by reason of references during the trial to the hearing that had been held out of the presence of the jury on the motion to suppress.

Affirmed.