Commonwealth, Appellant, *v.* Bowers.

Submitted September 14, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Paris J. DeSantis,* Assistant District Attorney, and *Richard B. Russell,* District Attorney, for Commonwealth, appellant.

*Peter Krehel,* for appellee.

OPINION BY SPAULDING, J., November 13, 1970:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Schuylkill County, Criminal Division, on June 24, 1970, suppressing certain evidence.

On September 25, 1969, Officer Daniel Lesko of the Frackville Borough Police Department obtained a search warrant from Justice of the Peace Frank Gallo, covering the premises of appellee, for a radio allegedly stolen from the home of a Mr. and Mrs. Tatushko, of Frackville. Lesko enlisted the aid of additional law enforcement officers including Trooper John Morrow of the Pennsylvania State Police. Pursuant to the warrant, the officers entered appellee's home. After an extensive search, the radio was discovered in the last room checked. Officer Lesko directed appellee to accompany him to Squire Gallo's office for identification of the radio. When Mrs. Bowers learned that her husband would likely not be home for dinner, she requested one of the officers to move two packages of frozen chicken from a table to the refrigerator. Officers Won

and Zuber did as requested and while doing so, the overly-stuffed freezer section spilled open, revealing packages of frozen crab and shrimp as well as sirloin steaks. The officers then accompanied Bowers to the Squire's office for identification of the radio by Mrs. Tatushko. She could not identify it.

Officers Won, Zuber and Morrow returned to the Bowers' residence with a warrant listing the items previously seen in the refrigerator.[1] While seizing these articles Trooper Morrow noticed a Zenith 23-inch portable television. He had been previously assigned to investigate a second area country club robbery (not related to the Tatushko or to the Fountain Springs Club incidents) and was aware that a Zenith 23-inch portable was one of the missing items. The serial number was on a list of stolen property which he carried with him. To confirm his belief that the television was in fact stolen from the country club, he picked up the set to determine whether the serial number coincided with the one on the robbery list. He was unable to locate the number and called a local television repairman who removed the back from the rear of the set revealing the serial number which matched the stolen set. Officer Morrow returned to the Squire's office and obtained another warrant, this time for the Zenith television.

The Commonwealth contends that the lower court should be reversed as to the order holding the television inadmissible. We disagree.

*Stoner v. California,* 376 U.S. 483, 486, 84 S. Ct. 889, 891 (1964) states, "[A] search ... without a warrant ... 'can survive constitutional inhibition only upon a show-

---

[1] Officer Zuber had been assigned the investigation of a burglary at the Fountain Springs Country Club. He had been informed of the food items stolen and concluded that the shrimp, crab and steaks were of that type.

ing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant.' " Thus, the Supreme Court has held that the Fourth Amendment establishes a clear preference for searches under a warrant. *United States v. Ventresca*, 380 U.S. 102, 106 (1965); *Aguilar v. Texas*, 378 U.S. 108 (1964); *Jones v. United States*, 362 U.S. 257 (1960). This line of authority recognizes only three exceptions to the warrant requirement. A warrantless search incident to a lawful arrest is valid, *Agnello v. United States*, 269 U.S. 20 (1925); *Chimel v. California*, 395 U.S. 752 (1969). And a warrantless search of an automobile or other vehicle is valid where it is not practicable to secure a warrant since the vehicle can be quickly moved out of the locality where the warrant must be sought, *Brinegar v. United States*, 338 U.S. 160 (1949); *Carroll v. United States*, 267 U.S. 132 (1925). A third exception was enunciated in *Harris v. United States*, 390 U.S. 234 (1968) and *Ker v. California*, 374 U.S. 23, 43 (1963), which recognized that no warrant was required where evidence had come to the officers' attention by virtue of being in "plain sight." It is, perhaps, more correct to say that in such a situation there was no "search."

It is difficult to develop a rule governing the scope of lawful search and seizure incident to an officer's presence. Such a rule must strike a proper balance between the individual right of privacy and the public interest in effective law enforcement while at the same time conforming to the requirements of the Fourth Amendment. We agree with the lower court that search and subsequent seizure of the portable television set does not fall within the "plain sight" doctrine as enunciated in *Harris*. The cases cited in the Commonwealth's brief to support its contention that the officers' actions were lawful are clearly distinguishable from the instant case.

Appellant relies on *Cotton v. United States,* 371 F. 2d 385 (9th Cir. 1967), a case holding that an officer need not obtain a warrant before opening the door of an impounded car to check the car's serial number for purposes of identification. Initially, the courts have always treated motor vehicles as a special category, and have granted law enforcement officials considerably more leeway where such searches are at issue. Television sets do not present the same compelling exigencies. To the contrary, the officers were not confronted with a situation of any apparent urgency. They were present in force and aware that they could seize the incriminating evidence at will. Further, *Cotton* as well those Circuits which have followed its reasoning have all dealt with situations in which the automobile was already in the lawful possession of the police *and* did not require a "breaking" to gain entrance.[2]

In *United States v. Catanzaro,* 282 F. Supp. 68 (S.D.N.Y. 1968), a postal inspector, lawfully on defendant's premises, observed a rifle on a wall rack. Believing, it to be a stolen item, he took it off the rack and scrutinized it more carefully, thereby confirming his suspicion. The Court stated: "That he was required to examine it more closely to identify the serial number did not transform a mere observation into an unconstitutional search," at p. 70.

The instant case is in no way analogous to *Catanzaro,* as the television could not be positively identi-

---

[2] The authorities from other jurisdictions are in conflict. The Tenth Circuit has held that such an inspection without a warrant is an invalid search. *Simpson v. United States,* 346 F. 2d 291 (10th Cir. 1965). The Sixth and Ninth Circuits have held the contrary. *United States v. Graham,* 391 F. 2d 439 (6th Cir. 1968) and *Cotton v. United States,* 371 F. 2d 385 (9th Cir. 1967). However, in each case the door of the automobile was open and no forcible entry was involved.

fied by either a "reasonable viewing" or a "careful scrutinization." Rather, once the officer realized that he could not make an immediate determination, he was forced to call a television repairman who for all purposes took the set apart before positive identification could be made. This is considerably more than a mere viewing and cannot in any manner be considered as part of the officer's "plain view."

As stated above, warrantless searches or seizures are the exception, not the rule. *Katz v. United States,* 389 U.S. 347 (1967) reiterated: " 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes,' . . . and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." at p. 357. (Citation omitted). Given the facts presented, it is our view that any extension of the "plain view" doctrine is totally unwarranted and is contrary to existing case law. To hold otherwise would create a fourth category of exception to the warrant requirement. This we are unwilling to do.

The order of the lower court is affirmed.

WRIGHT, P. J., and MONTGOMERY, J., dissent.