STATE of Missouri,
Plaintiff-Respondent,

v.

Samuel SINGLETON,
Defendant-Appellant.

No. 45883.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1983.

Motion for Rehearing and for Transfer to
Supreme Court Denied Aug. 29, 1983.

Application to Transfer Denied
Nov. 22, 1983.

Henry W. Cummings, St. Charles, for defendant-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Kristie Green, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

Appellant was found guilty by a jury, convicted of burglary in the second degree, § 569.170 RSMo.1978, and sentenced to fifteen years imprisonment as a persistent offender. Section 558.016 RSMo.1978. The judgment is affirmed.

Because several of appellant's fifteen points relied on deal with the same subject matter, they will be consolidated and the number reduced to seven. 1) Appellant's

first six points relied on are in substance a contention that the search of a trash bag was unconstitutional and therefore the trial court erred in not suppressing the identification number of a stereo which was in the trash bag, the identity of the owner of a driver's license number which was found on the stereo, and the identity of the victim of the burglary. 2) Appellant's points seven, eight and fifteen contest the sufficiency of the evidence. 3) The ninth point asserts the trial court erred in instructing the jury on the theory of aiding and abetting when he was charged only as an active participant. 4) Appellant's tenth point charges trial court error in failing to grant a new trial because one of the prosecution's witnesses gave surprise testimony on cross-examination. 5) The eleventh point asserts the trial court erred in admitting evidence of the name of the holder of the driver's license number found on a stolen item because evidence of the owner's name was inadmissible hearsay. 6) Appellant's twelfth point charges trial court error in admitting into evidence a pair of gloves carried by appellant's companion because evidence of the gloves was irrelevant. 7) The thirteenth and fourteenth points accused the trial court of error in admitting the testimony of a security guard concerning whether other burglaries had occurred in the area.

At about 8:30 p.m. on November 6, 1981 a private security guard at the American Red Cross Building on Lindell Boulevard in St. Louis received a telephone call that there were people at the side of an apartment building next to the Red Cross parking lot, people who were carrying merchandise or packages and who did not live in the apartment building. The caller thought that an apartment might have been burglarized. The guard received the call through what he called "distribution" as he could not receive direct calls.

The security guard looked out of his guard's shack and saw appellant and one Cleveland Owens walking along the side of the apartment building. When a fire engine passed with its siren sounding, the two men put down the items they were carrying and flattened themselves against the wall of the building. After the fire engine had passed, the two men picked up the items and resumed walking toward an alley.

The security guard then communicated with police through "distribution" because he was aware of other burglaries in the area and because of the activities of the two men. The guard walked out of the shack to investigate.

When the guard called out to the two men, only Owens stopped. Appellant continued walking until he was behind a truck and thus out of the guard's line of vision. The guard then drew his revolver and requested appellant to come back to a place where the guard could see him.

Owens was carrying a television set. Appellant was carrying a light brown, plastic trash bag. One could see through the plastic bag and observe that it contained a stereo and one speaker.

Appellant did not say anything to the guard, but appellant's companion first stated that the items were his and that he lived in the apartment building. At this point the police arrived. Owens then told the police that he was going to pawn the items for a friend to whom the items belonged. When the police noticed an identification number on the television and asked Owens if the stereo had a number on it, Owens said he did not know because he had bought the items a month ago from a fellow on the street.

The police then opened the trash bag. The stereo had an identification number which was identical to the number on the television set.

Although no burglaries had been reported recently, the police took appellant and Owens to the police station. There the police traced the identification numbers on the television set and the stereo to the driver's license of the wife of Neil Andre, who testified that he had etched the numbers onto the items, but that he had later sold the items to Ponchita Argieard.

An investigation of Ms. Argieard's apartment revealed that it had been burglarized.

Entry had been gained by pushing in a window air conditioner. The air conditioner was so high off the ground that one person would have had to stand on the shoulders of another in order to reach it. The burglary occurred between 3:30 p.m. and 11:00 p.m. on November 6, because Ms. Argieard had left her apartment around 3:30 and did not return until 11 o'clock. Although Ms. Argieard's apartment was not in the building next to which appellant and Owens were apprehended, it was in a building which was only 125 feet away.

Appellant's first contention is that the search of the trash bag which revealed the identification number of the stereo violated appellant's constitutional right to be free from unreasonable searches and seizures. U.S. Const. Amendments IV, XIV. This court disagrees.

A search without a warrant can survive constitutional scrutiny only if the facts surrounding the search bring it within one of the exceptions to the rule that a search must be authorized by a warrant. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 891[2–5], 11 L.Ed.2d 856 (1964). One of the exceptions to the requirement that a search be based upon a warrant is that a warrant need not be obtained where evidence appears in the plain view of the police officer. *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 816[1–4], 70 L.Ed.2d 778 (1982); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 993[4], 19 L.Ed.2d 1067 (1968).

The Fourth Amendment protects only against the violation of one's reasonable expectations of privacy; items left in plain view of government officers negate any inference that one had a reasonable expectation of privacy with respect to those items. See *State v. Oberg*, 602 S.W.2d 948, 952 (Mo.App.1980).

The testimony at the hearing on appellant's motion to suppress revealed that the container in which appellant carried the stereo was a light brown, plastic trash bag. The stereo and a speaker could be seen through the trash bag.

Because the stereo and speaker could be discerned without opening the trash bag the contents of the bag were in plain view. "What a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 511[9–12], 19 L.Ed.2d 576 (1967).

Although the stereo was in plain view, the number on it was apparently not detectable from outside the trash bag because the police opened the bag in order to discover whether the stereo had an identification number similar to the number on the television set. The issue thus becomes whether police officers may turn an object which is in their plain view so that a part of the item which lies outside their line of vision becomes visible.

In *United States v. Catanzaro*, 282 F.Supp. 68 (S.D.N.Y.1968), the court held that no Fourth Amendment violation occurred where an officer took a rifle, which was in plain view, and made a closer inspection of it, which led to the discovery of the rifle's serial numbers. *Id.* at 69–70. Similarly, in the case under review the police officers merely made a closer inspection of the stereo.

The present case is distinguishable from *Commonwealth v. Bowers*, 217 Pa.Super. 317, 274 A.2d 546 (1970), on which appellant relies, because in *Commonwealth* the officers called a television repairman who removed the back of a television set so that the officers could find the television's serial number. As the Pennsylvania Superior Court stated, "This is considerably more than a mere viewing and cannot in any manner be considered as part of the officer's 'plain view.'" *Id.* 274 A.2d at 548. Merely observing 'a' number on a stereo is obviously not to be compared with removing the back of a television set.

It is not enough, however, to show merely that items seized were in the plain view of the officers. *Cobb v. Wyrick*, 379 F.Supp. 1287, 1294 (W.D.Mo.1974). The warrantless seizure of items in plain view is justified only if the items were observed by

the officers while they are in a place where they have a right to be, the discovery of the items is inadvertent, and it is apparent to the officers that they have incriminating evidence before them. *State v. Strickland,* 609 S.W.2d 392, 395[9, 10] (Mo. banc 1980); *United States v. Shigemura,* 682 F.2d 699, 706[13, 14] (8th Cir.1982) *cert. den.,* —— U.S. ——, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983).

Did the police officers discover the stereo while they were in a place where they had a right to be? Appellant contends that the private security guard should be considered an arm of the police; that the private security guard lacked probable cause to seize appellant; and that therefore the security guard, and thus the police, had no right to be in a position to discover the stereo. None of these contentions has any merit.

█ The Fourth Amendment does not apply to a search and seizure made by a private citizen. *State v. Collett,* 542 S.W.2d 783, 787[7, 8] (Mo. banc 1976). Where a private security guard searched suspicious persons and seized incriminating evidence and the suspicious persons, this court held that the searches and seizures fell outside the scope of Fourth Amendment protection. *State v. Allen,* 599 S.W.2d 782, 786[7] (Mo. App.1980).

█ *State v. Allen* is distinguishable from the present case because here there is some evidence that there was communication between the police and security personnel when the security guard told "distribution," which was apparently a central switchboard for the security firm of which the guard was an employee, to call the police. The distinction is not meaningful.

The transcript of the suppression hearing does not contain any evidence from which one may infer that the police directed the security guard's actions. Indeed, there is not a shred of evidence in the record that the security guard himself had any contact with the police because the testimony of the security guard, which was the only evidence on the subject, revealed only that he told "distribution" to call the police. Therefore,

the security guard's acts did not constitute state action.

Moreover, even if the security guard's acts were imputed to the police, the security guard had ample probable cause to believe that appellant and Mr. Owens were engaged in criminal activity. The security guard possessed the following information: (1) that numerous burglaries had occurred in the area; (2) that "distribution" had told him that suspicious persons were in the area; (3) that appellant and Owens placed their packages down and flattened themselves against a wall when they heard a siren and resumed their course only when they learned that the siren was that of a fire engine; and (4) that appellant continued to walk away from the security guard until appellant was out of the guard's line of vision after the guard asked the two suspects if they would answer a few questions.

When the police arrived on the scene, they had even more reason to be where they were. They not only possessed the information relayed to them by the guard, but they also had the knowledge of Owen's three conflicting stories. More important, they had been called to the scene by a private party. It would be a strange rule of law that prohibited police from responding to citizens' complaints. The police therefore had a right to be where they were when they discovered the stereo.

Was the discovery of the stereo and speaker inadvertent? Although the security guard may have told the police about the existence of the trash bag which contained the stereo and the speaker, the discovery of the items was almost inevitable. The transparent trash bag had been set down directly in front of appellant when the police approached the trio consisting of appellant, Owens and the security guard. Given this set of circumstances, the police would have to have been blind in order not to see the trash bag and the contraband which the trash bag contained. The discovery of the stereo was inadvertent.

The last search and seizure issue is whether it was apparent to the officers that

they had incriminating evidence before them. The officers had probable cause to believe that a burglary had occurred in the vicinity. The conflicting statements given by Owens regarding the television set gave rise to further suspicion. When the officers discovered that the television set and the stereo had the same identification numbers, the officers could reasonably believe that both the television set and the stereo were stolen. A stereo is not by itself incriminating; "[u]nder suspicious circumstances, however, innocent looking objects may be legally seized as incriminating evidence." *State v. Hall*, 534 S.W.2d 508, 511[7] (Mo. App.1976). Because the circumstances were suspicious, the police were justified in seizing the stereo.

The search and seizure of the items in the trash bag did not violate the Fourth Amendment. It is therefore unnecessary to consider whether the identity of the owner of the driver's license number on the stereo or the identity of the victim of the burglary resulted from an unconstitutional search and seizure.

■ Appellant next challenges the sufficiency of the evidence. The evidence was sufficient to convict appellant of second degree burglary.

"In determining whether the evidence is sufficient to support a criminal conviction, [this court] must consider the evidence and all reasonable inferences therefrom in the light most favorable to the state and ignore all contrary evidence and inferences." *State v. Stewart*, 636 S.W.2d 345, 346[1] (Mo.App.1982).

It would serve no purpose to recite the details of the evidence. A thorough reading of the transcript and the briefs of the parties has convinced this court that the evidence adduced, when viewed in the light most favorable to the state, is sufficient to support the jury verdict finding appellant guilty of second degree burglary.

■ Appellant also accuses the trial court of error in instructing the jury on a theory of aiding and abetting whereas appellant was allegedly charged only as an active participant. In other words, appellant argues that there is a fatal variance between the crime charged in the information and the crime submitted to the jury.

The information charged that appellant "... acting with another knowingly entered unlawfully in an inhabitable structure ... for the purpose of committing stealing therein." The jury was instructed that it would find appellant guilty if it found that appellant aided or attempted to aid another in the commission of the burglary. There was no error. An extended discussion of this point would have no precedential value and it is ruled against appellant in compliance with Rule 84.16(b).

Appellant next contends that "[the] trial court erred in failing to grant defense counsel's motion for a new trial because defense counsel was surprised by the testimony of the prosecution witness ... that an identification number was viewable on defense and prosecution's Exhibit # 10." The testimony was given on cross-examination. This argument is wholly without merit on its face.

■ The prosecution witness was an endorsed witness. It is in the nature of trials that a prosecution witness may give surprise testimony which is adverse to the interests of the defendant. That appellant's counsel was surprised by the responses of the witness and that appellant's counsel found it difficult to believe the witness's testimony is of no consequence. Appellant had an adequate opportunity to further cross examine the witness. Credibility of a witness lies within the sole province of the jury. *State v. Williams*, 600 S.W.2d 120, 122[8] (Mo.App.1980).

■ Appellant also complains that testimony by one prosecution witness that the identification number on the stereo was the driver's license number of the witness's wife was inadmissible hearsay. "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the

credibility of the out-of-court asserter." McCormick on Evidence § 246 (1972).

The relevance of the witness's testimony was not that the identification number on the stereo was that of the witness's wife; rather, the testimony was relevant only to show that the witness had placed a number on the stereo. Thus, the probative value of the testimony did not rest upon the credibility of an out-of-court asserter. "The hearsay rule has no application where the extrajudicial utterance or writing is offered 'not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted.'" *Bond v. Wabash Railroad Co.*, 363 S.W.2d 1, 5[3, 4] (Mo.1962). There was no trial court error in admitting the testimony of which appellant complains.

 Appellant next argues that the trial court erred in admitting into evidence a pair of gloves which were carried by Owens because the gloves were irrelevant. The contention is without merit.

Evidence which tends to prove how a crime was committed is admissible, "... even though the evidence may not be otherwise connected with the accused." *State v. Means*, 628 S.W.2d 426, 429[5, 6] (Mo.App. 1982). Here the evidence of the gloves was relevant to explain why no finger prints had been found at the scene of the burglary. That the gloves were taken from Owens and not appellant does not render the evidence irrelevant because other evidence proved the complicity of Owens and appellant in the burglary.

 Furthermore, the materiality and relevancy of evidence is a matter generally vested within the sound discretion of the trial court. *City of Cape Girardeau v. Robertson*, 615 S.W.2d 526, 531 (Mo.App.1981); *Kelso v. Lincoln Nat. Life Ins. Co.*, 227 Mo.App. 184, 51 S.W.2d 203, 209[7, 8] (1932). No abuse of discretion has been shown.

 Finally appellant contests the admissibility of statements made by the private security guard that he was aware of other burglaries in the area. The point is without merit.

The guard's testimony that he knew of other burglaries in the area was not elicited during the trial, but during the hearing on appellant's motion to suppress evidence of the stereo, the identification number on the stereo, and other fruits of an allegedly poisonous tree, i.e., the search of the stereo. The probable cause to conduct a search and seizure may rest upon evidence which is not admissible in a criminal trial. *State v. Phillips*, 532 S.W.2d 533, 535[4–8] (Mo.App. 1976).

 The knowledge held by the security guard regarding other burglaries in the area was relevant to establish the reasonableness of the private guard's search. Based upon his belief regarding other burglaries in the area, the phone call through "distribution," and, the suspicious nature of appellant's and Owen's activities which the security guard observed, the guard had probable cause to suspect that criminal activity was afoot.

Furthermore, the belief of the security guard regarding the number of burglaries in the area was not heard by the jury. The challenged testimony could not have prejudiced appellant's right to a fair trial.

The judgment is affirmed.

DOWD and GAERTNER, JJ., concur.