536 A.2d 811

COMMONWEALTH of Pennsylvania, Appellant,

v.

Arthur R. PINE.

Superior Court of Pennsylvania.

Argued Sept. 2, 1987.

Decided Jan. 27, 1988.

Hugh J. Burns, Assistant District Attorney, Philadelphia, for Com., appellant.

Owen Larrabee, Philadelphia, for appellee.

Before CAVANAUGH, ROWLEY and MONTEMURO, JJ.

ROWLEY, Judge:

This is an appeal by the Commonwealth of Pennsylvania from an order granting a motion to suppress evidence that was filed by appellee Arthur Pine, who was charged with first degree felony burglary, theft, and criminal trespass after he allegedly stole a television set.[1] The order effectively suppresses all evidence connecting appellee with the theft. There are two issues in this appeal: 1) whether the identification of appellee by a Philadelphia police officer must be suppressed as the fruit of an unlawful stop and detention of appellee; and 2) whether the serial number of the television set that appellee was carrying when he was stopped by the police officer must be suppressed as the fruit of an unlawful search. We conclude that neither the identification of appellee nor the serial number should be suppressed. Therefore, we reverse the order of the suppression court.

■ It is settled law that when the Commonwealth asserts in good faith that the granting of a suppression motion substantially impairs or effectively terminates the prosecution because of a lack of evidence, the Commonwealth has the right to appeal the suppression order. *Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985); *Commonwealth v. White*, 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). In the present case the Commonwealth has certified that the suppression order of

1. Appellee's motion to suppress was originally granted by the court on October 22, 1986. The Commonwealth petitioned for reconsideration of the order on November 18, 1986. On that date the court vacated its original order pending a hearing. A hearing was held on November 25, 1986, and the court reinstated its original order on that date. This timely appeal followed.

November 25, 1986, terminates or substantially handicaps its case. The Commonwealth's certification is sufficient, in and of itself, to authorize this appeal. *Commonwealth v. Dugger*, 506 Pa. at 545, 486 A.2d at 386. Accordingly, we turn to the merits of the case.

The pertinent facts of the case are as follows: On March 4, 1986, at approximately 1:40 a.m., Officer Mark Bugieda was patrolling the area of 200 West York Street, Philadelphia, in his marked police car when he observed appellee sitting on a step at Fourth and York. As the officer approached appellee, appellee looked in the officer's direction, stood up, and walked away. The officer resumed his patrol and, moments later, returned to York and Fourth. Again, he saw appellee sitting on the step. Again, appellee stood and walked away. For a few minutes Officer Bugieda continued to watch appellee, who walked away, looked back at the officer, and kept walking.

Ten or fifteen minutes later, the officer again saw appellee. This time he was walking east on York Street and was carrying a television set on his shoulder. On the basis of appellee's actions and the officer's personal knowledge of numerous burglaries in the area, Officer Bugieda stopped appellee and asked him what he was doing. Appellee replied that he had just come from his grandmother's house at 317 West Lehigh Avenue and that he was taking the television set home to repair it. The officer asked appellee for identification both for himself and for the television set. Appellee said that he had identification for himself but not for the set. The officer then checked his "Part One Sheet," which lists thefts or burglaries reported from the previous night or day, but found no listing for a television set. Officer Bugieda asked appellee where he was going and appellee replied, "Home." Appellee then "allegedly said, 'You can take me back to 317 Lehigh and ask my grandmother.'" Trial Court Opinion at 2; *see also* N.T. at 6.[2] The officer placed appellee and the television set into the

2. "N.T." refers to the notes of testimony given at the suppression hearing on October 22, 1986.

police car, drove to 317 West Lehigh Avenue, knocked on the door, and received no response. The officer then attempted to check the television set through the police computer that keeps track of lost or stolen goods, but the computer was inoperative. Officer Bugieda recorded the serial number that was affixed to the rear of the television set and examined appellee's forms of identification.

At this point ten to fifteen minutes had elapsed from the time that Officer Bugieda first spoke to appellee. The officer brought appellee back to the place where he had originally stopped him and allowed him to continue on his way with the television set. Later that day the officer learned that a television set with the same serial number as the one in appellee's possession had been stolen. On that basis an arrest warrant was issued for appellee, and he was subsequently arrested. Because the television set has never been recovered, the only evidence actually linking appellee to the stolen set is the serial number recorded by Officer Bugieda.

Appellee filed an omnibus pre-trial motion seeking to suppress all identifications and physical evidence obtained as a result of his encounter with Officer Bugieda and subsequent arrest. The trial court suppressed all of the evidence related to the encounter because it concluded that both the "stopping" and the "detention" of appellee by Officer Bugieda had been improper. Trial Court Opinion at 3. The court reasoned that because the officer had had no probable cause to justify the stop, the information, including the serial number, obtained as a result of that stop must be suppressed. *Id.* In the view of the trial court, "[t]he officer had a duty under the circumstances to tell the [appellee] to go on his way and not accede to the [appellee's] 'request' to go to his grandmother's house. The placing of the [appellee] in the police car was an arrest." Trial Court Opinion at 4.

In determining the propriety of a suppression order, we are required to review the unique facts and circumstances of each case. *Commonwealth v. Mackie*, 456 Pa. 372, 376, 320 A.2d 842, 844 (1974). Our scope of review is limited

primarily to questions of law. *Commonwealth v. White,* 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). We are bound by the suppression court's findings of fact, if those facts are supported by the record. *Commonwealth v. James,* 506 Pa. 526, 533, 486 A.2d 376, 379 (1985); *Commonwealth v. White, supra.* In determining whether the findings of fact are supported by the record, we may consider only the evidence of appellee and so much of the Commonwealth's evidence as, read in the context of the entire record, remains uncontradicted. *Commonwealth v. James,* 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. White, supra.* Questions of credibility are to be resolved by the suppression court as the trier of fact rather than by us as a reviewing court. *Commonwealth v. Eden,* 456 Pa. 1, 4, 317 A.2d 255, 257 (1974); *Commonwealth v. White, supra.*

In the case before us, appellee offered no testimony at the suppression hearing. The Commonwealth's testimony was therefore uncontradicted. While the testimony of Officer Bugieda, the Commonwealth's only witness, was subject to the suppression court's evaluation of its credibility, the suppression court did not make a specific finding with regard to the officer's credibility.

The first issue in this case requires us to determine whether either the initial stop or the subsequent transportation of appellee to what was alleged to be his grandmother's residence was unlawful. We conclude, contrary to the trial court, that neither action by the police officer was unlawful. Initially Officer Bugieda made a *"Terry"* stop of appellee. Such a temporary, investigatory stop may be made in the absence of probable cause for arrest if the police officer reasonably suspects that criminal activity is afoot. *Commonwealth v. Hicks,* 434 Pa. 153, 158, 253 A.2d 276, 279 (1969); *Commonwealth v. Jackson,* 359 Pa.Super. 433, 437, 519 A.2d 427, 429 (1986); *see also Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). The police officer must be able to point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, reasonably warrant the intrusion. *Common-*

*wealth v. Murray,* 460 Pa. 53, 61, 331 A.2d 414, 418 (1975); *Commonwealth v. Prengle,* 293 Pa.Super. 64, 68, 437 A.2d 992, 994 (1981). Given the combination of appellee's actions, the late hour, and Officer Bugieda's knowledge of the character of the neighborhood, we conclude that the officer had a reasonable suspicion that criminal activity was afoot. Although the mere fact that appellee twice walked away upon seeing the officer's police car is insufficient in itself to support a stop, *see Commonwealth v. Jeffries,* 454 Pa. 320, 325, 311 A.2d 914, 917 (1973) (quickening of one's pace at sight of police officer and starting to run when chased by officer is not enough to justify *Terry* seizure); *Commonwealth v. Stratton,* 231 Pa.Super. 91, 95, 331 A.2d 741, 742 (1974) (allocatur denied) (flight alone, even upon seeing police officer, is insufficient to justify a stop and search), the stop of appellee was justified by the fact that on the officer's third sighting of appellee the latter was carrying a television set, it was nearly two a.m., and the officer knew that numerous burglaries had occurred in the area. *See also Commonwealth v. LeSeuer,* 252 Pa.Super. 498, 500–1, 382 A.2d 127, 128 (1977) (allocatur denied) (reasonable suspicion for stop where police officers observed defendant carrying expensive stereo equipment in a high-crime area and observer told them he had seen defendant running out of a house carrying the equipment); *Commonwealth v. Wascom,* 236 Pa.Super. 157, 160, 344 A.2d 630, 632 (1975) (allocatur denied) (reasonable suspicion for stop where shortly after midnight police officer saw defendant and a companion walking in a business district that contained clothing and appliance stores, defendant carrying a radio and men's trousers and companion carrying a radio).

■ We also cannot agree with the suppression court's conclusion that appellee was under arrest when he was placed in the patrol car and taken to the address that was allegedly his grandmother's. The court based its conclusion on a finding of fact that "at all times pertinent hereto the [appellee] was in reality under the actual control of the police officer." Trial Court Opinion at 4. However, we are not bound by a finding that is wholly lacking in evidence,

*Commonwealth v. White,* 358 Pa.Super. at 123, 516 A.2d at 1213, and there is no evidence in the record to support the finding just cited. The uncontradicted testimony of Officer Bugieda is that when he asked appellee where he was going, appellee replied "Home" and then said, "You can take me back to 317 Lehigh and ask my grandmother." N.T. at 6.[3] Because the court's finding of fact is unsupported by any evidence, we must reject the inference that the court drew from that finding, namely, that appellee's request to go to West Lehigh Avenue to verify his story was not voluntary. We conclude that appellee consented to go with Officer Bugieda to West Lehigh Avenue and therefore was not under arrest.

The suppression court relied on the case of *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983), to support its conclusion that appellee was under arrest when he was placed in the patrol car. In *Lovette* our Supreme Court held that the placing of the defendant in a police vehicle in order to transport him, absent either the defendant's consent or exigent circumstances, to the scene of the offense so that the complainant could view the objects in the defendant's possession, constituted an illegal arrest without probable cause even though the seizure was undertaken in order to further the investigation rather than to arrest and charge the defendant. Because appellee in the case at bar consented to go with Officer Bugieda, the suppression court's reliance on *Lovette* is misplaced.

The facts of the present case resemble more closely those of *Commonwealth v. Petrino,* 332 Pa.Super. 13, 480 A.2d 1160 (1984), *cert. denied,* 471 U.S. 1069, 105 S.Ct. 2149, 85 L.Ed.2d 505 (1985). In that case police officers questioned

---

**3.** Appellee argues that the suppression court did not believe the officer's "self-serving claim" that appellee had requested that he be taken to his grandmother's. Brief for Appellee at 10. We do not find appellee's argument persuasive. The court did not say that appellee had not made the request. Rather, the court concluded, with no evidence to support its finding, that the encounter between appellee and Officer Bugieda was so inherently coercive that appellee could not have voluntarily made the request. We will not accept findings of the suppression court that lack support in the record.

the defendant, who had been found trying to hitchhike on the Pennsylvania Turnpike, as to his identity. He volunteered the name and room number of someone at a nearby inn who could identify him. The defendant accompanied the police to the inn, where the person he had named implicated him in a murder that had been committed near the inn. We stated in *Petrino* that:

> Appellant ... was asked to properly identify himself. He *volunteered* the name and whereabouts of a person who could identify him. He went with police to the Inn and was implicated by that person. While this court is mindful that such intermediate responses[4] are lawful only in narrow instances and that the transporting of individuals is very persuasive of the fact that an arrest has occurred, such a response was lawful here. There is no evidence that Appellant would not have been free to go after he was properly identified or that he was forced to accompany police.... [T]he response was both necessary and justified....

*Id.* 332 Pa.Super. at 23, 480 A.2d at 1165.

In the case before us, appellee not only volunteered the identity and location of a person who could verify his story, but also requested that the police officer take him there. Moreover, appellee was free to go after Officer Bugieda received no response at West Lehigh Avenue. On these facts we hold that Officer Bugieda adopted an appropriate intermediate response to the situation. Because the officer's identification of appellee resulted from a lawful *Terry* stop, which at no time became an unlawful arrest, the identification is admissible as evidence.

■ The second issue in this appeal requires us to determine whether the police search of the television set to obtain the serial number was lawful. Appellee contends that even if a *Terry* stop was lawful under the circumstanc-

---

4. An "intermediate response" is a request by police for information where the facts may not warrant an arrest. *See Commonwealth v. Daniels,* 280 Pa.Super. 278, 284–85, 421 A.2d 721, 724–25 (1980); *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

es of this case, the resulting search exceeded the permissible scope of a search incident to a *Terry* stop. As to the scope of a search pursuant to a *Terry* stop, appellee is correct. A search may be conducted incident to a *Terry* stop only if the police officer reasonably believes it to be necessary for his own safety or that of others. *Commonwealth v. Berrios*, 437 Pa. 338, 341, 263 A.2d 342, 343 (1970). The search must be limited to the detainee's person and immediate surroundings and can go no further than is necessary to discover any dangerous weapons which may be used on that occasion against the officer. *Commonwealth v. Carter*, 334 Pa.Super. 369, 373, 483 A.2d 495, 497 (1984). We agree with appellee that the search in this case exceeded the scope of a *Terry* stop. However, we also conclude that the search for the serial number was permissible under the "plain view" doctrine.

For the plain view doctrine to apply, three elements must be satisfied: 1) the initial intrusion must be lawful; 2) observation of the item must be inadvertent; and 3) there must be probable cause to link the observed property with criminal activity. *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 570, 490 A.2d 923, 927 (1985). Here, because there was a proper *Terry* stop, the intrusion was lawful. It is also not disputed that observation of the television was inadvertent, although it was necessary to turn the television in order to see the serial number. Finally, by the time the police officer obtained the serial number, he had probable cause to link the television with criminal activity: it was the middle of the night; the incident occurred in an area known to have had a series of burglaries; appellee's actions in walking away from the police officer were at least suspicious; the third time within fifteen minutes that the officer spotted appellee, after appellee had already left the area twice, the appellee for the first time had a television; and appellee's excuse for having the television could not be corroborated. Despite the fact that Officer Bugieda could not confirm that a television had been reported stolen because the police computer was not operational and/or the television had not yet been discovered to have been stolen,

the set of circumstances just noted gave the officer probable cause to link appellee's carrying of the television with criminal activity. Therefore, the television itself could have been seized by the officer without a warrant because it was within plain view.

The question, then, is whether the serial number must be excluded from evidence because the number itself was not within the plain view of the police officer even though the television, which necessarily had to have a serial number affixed to it, was unmistakably within plain view and could have been seized. It is anomalous to say that the entire television could have been seized and placed into evidence, but that the police officer's lesser act of interference with appellee, simply turning the television and obtaining the serial number, resulted in the evidence of the serial number being inadmissible. *See Arizona v. Hicks,* —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

Although our research has not uncovered a Pennsylvania case on point, we find the facts of the present case to be indistinguishable in any pertinent regard from those in *State v. Singleton,* 660 S.W.2d 13 (Mo.App.1983). In *Singleton,* a private security guard received a telephone call that there were people at a nearby apartment building who were carrying merchandise but who did not live in the apartment building. The guard looked outside his guard shack and saw two people walking alongside the apartment building. A fire engine then passed with sirens blaring, and the two men put down what they were carrying and pressed themselves against the building. After the fire engines had passed, they picked up the packages and resumed walking. The guard notified the police and walked out of his shack, calling to the two men. One stopped, but the other kept walking until he was out of sight. The guard drew his gun and told the hiding person to come out where he could be seen. The person who had been hiding was carrying a plastic bag through which a stereo could be seen. The other person, who was carrying a television, claimed that all of the items belonged to him and that he lived in the apartment building and was on his way to pawn

the items. The police, who by then had arrived, noticed an identification number on the television and asked if there was one on the stereo. The alleged owner said he did not know. The police then opened the bag and saw that the same identification number was on the stereo. Although no burglaries had been reported, the two people were taken to the police station, where it was subsequently learned that the items had been stolen that night.

The defendant objected to the admission of the identification number on the stereo. However, the court determined that a police officer who can see an object within plain view may turn or move the object so as to see some other part of the object that is out of the officer's line of vision. Thus, because the court found that the officer, at the time he removed the stereo from the bag, had probable cause to believe that the two men were involved in criminal activity, because the men were legitimately stopped, and because the stereo, although inside a plastic bag, was in plain view, the court concluded that the identification number was admissible.

■ The present case is substantially similar to *Singleton*. In both cases, the defendants were carrying portable electronic equipment in the dark. In both cases, the defendants acted in a suspicious manner when they perceived someone in authority to be approaching: in *Singleton*, the defendants flattened themselves against a wall upon hearing sirens, and when someone called out to them to stop, one of them moved out of sight; in the case presently before us, appellee twice walked away when the police officer appeared, and looked back to see if the police officer was still watching. In both cases, when the defendants were stopped, they offered weak excuses for carrying the items in their possession: in *Singleton*, one of the defendants claimed to be a tenant in the nearby apartment building, despite a report by a resident of the building that people who were not residents were carrying merchandise away from the building; in the case before us, appellee claimed to have received the television from his grandmother just a few moments before the police officer saw him

422

with it, yet no one would answer the door at the alleged grandmother's house. Finally, in both cases, the electronic equipment was within plain view, but the identification/serial numbers could be seen only by moving the equipment. Having considered the factual similarities of the two cases, we conclude that the reasoning of the *Singleton* court is appropriate to the case before us. Because Officer Bugieda could see in plain view the television set that appellee was carrying, it was lawful for the officer to turn the set in order to see its serial number. Thus, the serial number is admissible as evidence.

Because Officer Bugieda executed no more than a lawful *Terry* stop of appellee and conducted a permissible search of an object that was in plain view, we conclude that both the serial number of the television set and the officer's identification of appellee can be admitted into evidence at appellee's trial. Accordingly, we reverse the order of the trial court and remand the case for trial.

Order reversed and case remanded. Jurisdiction relinquished.