STATE of Missouri,
Plaintiff-Respondent,

v.

William B. CALDWELL,
Defendant-Appellant.

No. 48949.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 20, 1985.

Rehearing Denied Oct. 3, 1985.

---

William L. Webster, Atty. Gen., T. Chad Farris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Robert J. Maurer, Asst. Public Defender, Clayton, for defendant-appellant.

SIMON, Presiding Judge.

William B. Caldwell, defendant herein, was found guilty by a jury of one count for unlawful use of a weapon in violation of § 571.030 RSMo 1978 and four counts of possession of controlled substances in violation of § 195.020 RSMo 1978. Defendant was sentenced as a prior offender to serve a term of five years for the weapon offense and twelve years on each of the four counts for drug possession, all sentences to be served concurrently.

On appeal defendant contends the trial court erred in: (1) overruling his motion to suppress evidence that was seized in a warrantless search of his hotel room; (2) overruling objections to questions asked on cross-examination; (3) permitting the introduction of a hotel registration form because it was not a business record and violated the best evidence and hearsay rules; and (4) overruling the motions for a directed verdict of acquittal because the state failed to make a submissible case. We affirm.

The following evidence was presented at trial. At approximately 2:00 a.m. on October 18, 1981, Officer Kissell of the Berkeley Police Department observed a car driven by defendant exit the parking lot of a Ramada Inn. The car had no front license

plate prompting the officer to follow the car and to radio a dispatcher for a check on the vehicle's registration. Upon learning that it was not on file, Officer Kissell stopped the car and approached the driver's side of the car. A back-up officer also arrived on the scene and approached defendant's car from the rear passenger side.

At Officer Kissell's request defendant got out of the car and accompanied him to the rear. Positioned in the middle of both officers, defendant was informed that he had been stopped because of his license plate, and was asked to produce his driver's license. When Officer Kissell learned defendant had no driver's license, he informed defendant he was under arrest and told him to turn around and place his hands on the car's trunk. Instead, defendant turned, reached into his jacket pocket, retrieved a .38 calibre derringer, pointed it at Officer Kissell, and tried to shoot him; however, the gun did not discharge. Officer Kissell struck defendant when he saw the gun and a struggle ensued. During the struggle, defendant dropped a pouch containing $1,422.00 in cash. Defendant was finally subdued and handcuffed during the arrest; his gun, cash, and a Ramada Inn room key were seized.

When the officers arrived at the police station they called a detective to check the car which had been brought to the station for an inventory search. Upon observing what appeared to be bone fragments and bloodstains in the front passenger area of the car, the police became concerned that some violence had occurred in the vehicle very recently. The detective spoke to the night manager and the security officer of the Ramada Inn who related that defendant had been staying there with a woman. The security officer had seen defendant coming and going during the past twelve hours, but not his female companion. The detective then called an assistant prosecutor, informed him of their suspicions and of their intention to investigate the hotel room to locate the female companion, possibly seriously injured. The officers did not obtain a search warrant.

Around 5:00 a.m. the officers telephoned the room and knocked on the door of room 105 of the Ramada Inn. Hearing no response, the detective and several other officers entered with a passkey. Upon entering, they began looking for someone possibly needing medical assistance. One officer looked under the bed and saw a large plastic bag of marijuana, a metal strong box, its lid partially open, with a bag of marijuana and a white, powdered substance hanging out. These and numerous other items, later identified as controlled substances and drug paraphernalia, were seized from the room. Some of the defendant's personal items found in close proximity to the drugs were photographed and seized along with the other items.

While the officers were in the room, defendant's female companion entered the hotel lobby. The hotel security guard noticed her and called the detective who reached the hotel lobby in time to observe her attempting to hide a gun between two telephone books. The detective searched her, discovered pills and marijuana in her purse, and subsequently arrested her.

Defendant's first point states the trial court erred in overruling his pre-trial motion and objection at trial to suppress evidence of the items taken from the hotel room because the search of the room violated his federal and state constitutional rights. Defendant's point raises two issues: first, whether the entry was valid; second, whether the scope of the search and seizure was exceeded.

In support of his first point, defendant cites *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) as controlling. Defendant's reliance upon *Mincey* is misplaced. In *Mincey*, during a drug raid by several officers of an apartment, an undercover officer in the apartment was shot and killed. After the shooting, the narcotics agents, thinking others in the apartment might have been injured, looked about quickly for other victims. *Mincey*

and a young woman in the bedroom and another person in the living room were discovered wounded. The agents guarded the suspects while waiting for the requested medical assistance to arrive. They conducted no search because a police department directive prohibited police officers from investigating incidents in which they were involved. Within ten minutes, however, homicide detectives arrived, supervised the removal of the dead agent and wounded suspects, and took charge of the investigation. The homicide officers then conducted a protracted search, lasting four days. Every item in the apartment was closely examined and inventoried; 200 to 300 objects were seized. In short, Mincey's apartment was subjected to an exhaustive and intensive search without a warrant.

On appeal, the Arizona Supreme Court reaffirmed previous decisions in which it had held that the warrantless search of the scene of a homicide or of a serious personal injury with likelihood of death where there is reason to suspect foul play is constitutionally permissible. *State v. Mincey*, 115 Ariz. 472, 566 P.2d 273, 283–84 (banc 1977). The United States Supreme Court disagreed in *Mincey v. Arizona*, 437 U.S. 385, 391, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). While it recognized that police who come upon the scene of a homicide may make a prompt warrantless search of the area to see if there are other victims or if the killer is still on the premises and they may seize any evidence in plain view during the course of their legitimate emergency activities, the Supreme Court emphasized that "a warrantless search must be strictly circumscribed by the exigencies which justify its initiation." *Id.* at 394, 98 S.Ct. at 2414. The Supreme Court concluded that "a four day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search." *Id.*

We are unpersuaded that *Mincey* is controlling. Although the general rule is that an entry and search without a warrant are deemed unreasonable under the fourth amendment, the exigency exception is one which has been long recognized. *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *State v. Epperson*, 571 S.W.2d 260 (Mo. banc 1978); *State v. Sutton*, 454 S.W.2d 481 (Mo.1970). We are guided by our Missouri Supreme Court which has held that exigent circumstances may establish probable cause for the police to believe that a crime had been committed to justify a search without a warrant. *State v. Epperson*, 571 S.W.2d 260, 264 (Mo. banc 1978).

The critical facts in *Epperson* were: (1) defendant's wife and children had been missing several days; (2) defendant had given false and inconsistent explanations for their absence; (3) defendant's manner was nervous and unusual; (4) an odor of decomposed flesh had been detected in the house; and (5) defendant disappeared with no explanation shortly before the police arrived at the house. Furthermore, the officer on duty testified at trial he really did not know what the circumstances were, whether the family had left town or were in immediate need of help to prevent death. *Id.* at 265. Judged by an objective standard the facts were held sufficient to justify the officers' initial entry into the defendant's home, despite the ambiguous testimony as to their subjective belief. *Id.*

■ Applying this objective standard to the record before us, we find exigent circumstances established probable cause for the police to believe a crime had been committed to justify their warrantless entry and subsequent search and seizure. Defendant had left the hotel in an unregistered car with no front license plate and, when pulled over by police for this seemingly minor traffic infraction, had tried to shoot one of the officers. He had no operator's license and gave a false name and age to the police at his arrest. During his booking, an inventory search of the automobile disclosed what appeared to be human blood and bone fragments in the front seat of the car. The detective learned from hotel personnel that defendant and a woman were staying together in a room at the hotel and

that defendant had been observed leaving and entering room 105 for the past week or so in the company of this woman; however, she had not been seen for the last 12 hours. Furthermore, defendant had a Ramada Inn hotel key to room 105 in his possession. The officers were concerned over the well-being of defendant's female companion. Similar to *Epperson*, the detective here testified that he entered the room "to see if anyone was in the room, to see if they were either seriously injured or possibly dead." After entering defendant's hotel room, the police conducted no more than a cursory search of the room looking for defendant's female friend, possibly dead. They found, instead, contraband in plain view which they seized. Their search lasted only a few hours, readily distinguishing it from the four day "carpet-ripping" melee in *Mincey*.

The detective's opportunity to have made investigatory telephone communications does not dispel the existence of an emergency situation and does not refute the existence of insufficient time to secure a search warrant from a judge. The officer talked with a prosecutor just before arriving at the hotel and had only briefly inquired of the night manager and hotel security officer about the circumstances surrounding the defendant's earlier presence at the hotel before entering his room. Similarly, in *Epperson*, one of the officers was stationed near the house before anyone entered and another officer went to a next door neighbor and placed a series of calls to find out where the defendant's wife worked and what school the child attended and numerous other facts. The officer also engaged in a telephone conference with the chief of police; afterwords, the officer also questioned the defendant's parents. Only then was the house entered. Notwithstanding the time lapse for these telephone calls, the circumstances remained exigent. In light of *Epperson*, we find the warrantless entry was valid.

■ We now consider the scope of the search and seizure. Initially, we note that police making a prompt warrantless search of the area for other victims may seize

evidence in plain view during a legitimate emergency investigation. *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982); *State v. Singleton*, 660 S.W.2d 13, 16[2] (Mo.App.1983); *Epperson*, 571 S.W.2d at 265. The warrantless seizure of evidence in plain view is valid only if the police are in a place where they have a right to be, the discovery of the items is inadvertent, and it is apparent to the officers that they have incriminating evidence before them. *Singleton*, 660 S.W.2d at 17[5]. In this case the officers entered the hotel room in an attempt to give emergency aid to a possible victim; once inside, they seized evidence in plain view within the room. The search lasted no longer than the time necessarily required to properly tag and remove the items seized within plain view. Since defendant's female companion had not been located and the search was continuous with the entry, we find the exigency of the situation had not dissipated. The scope of the search and seizure was not excessive.

Defendant's argument that the evidence seized was not in plain view merely recites that the contents of a briefcase were inadmissible under any theory and that drugs found in partially opened dresser drawers were improperly seized. Defendant fails to elaborate on this point. We have reviewed the record thoroughly and find no reason to bar the admission of these items into evidence where the items seized were in plain view. Defendant's first point is without merit.

■ In his second point defendant raises trial court error for overruling his objections to the prosecutor's cross-examination of defendant as beyond the scope of his direct examination, thereby permitting prejudicial evidence including photographs of defendant, photographs of his boots and other personal belongings, and a xerox copy of the Ramada Inn registration form to be admitted. The permissible extent of cross-examination in a criminal case where the defendant testifies is largely a matter of discretion with the trial court and whether cross-examination in a case is error is

generally decided on a case by case basis. *State v. Harris*, 564 S.W.2d 561, 574[20] (Mo.App.1978). Generally, the prosecution is not confined to categorical review of the evidence given by the defendant on direct examination but may examine him in detail as to matters generally referred to in his examination in chief. *State v. Murphy*, 592 S.W.2d 727, 731[1] (Mo. banc 1979). A defendant testifying on his own behalf is subject to cross-examination, contradiction and impeachment the same as any other witness. *State v. Davison*, 457 S.W.2d 674, 676[3] (Mo.1970).

■ In his direct examination defendant answered questions about his marital status, employment, automobile, and relationship with Carol Warner, the woman identified as his companion at the Ramada Inn. Defendant answered indirectly he did not know her very well. On cross-examination the state was entitled to elicit testimony that indicated defendant did know her well. To establish their familiarity, the prosecutor questioned defendant about certain articles, including his briefcase, address book, wristwatch, cowboy boots, and other sundry items which were found in the room at the Ramada Inn where the illegal substances were seized. The presence of defendant's personal effects in a room where Carol Warner was staying impeached the credibility of defendant's earlier statements that he barely knew her.

■ The cross-examination of defendant concerning the registration form at the Ramada Inn was also proper. In response to defendant's testimony on direct that he and his wife had separated and that he barely knew Carol Warner, the state was entitled to inquire where and with whom he was staying. The details elicited by the state on cross-examination were within the bounds of matters generally referred to in the examination in chief. *Murphy*, 592 S.W.2d at 731. Accordingly, we find no abuse of discretion by the trial court. Defendant's second point that the admission of certain photographs and testimony exceeded the scope of direct examination is without merit.

Defendant's third point raises trial court error in admitting a copy of the Ramada Inn registration form over his objections of hearsay, improper foundation, and not the best evidence. During the state's case-in-chief, the detective testified that on the night he went to the Ramada Inn to conduct the search of room 105, the hotel refused to give him the original registration form indicating the identity and signature of the room's occupant, so he xeroxed the hotel's registration form. Defendant's hearsay objection was overruled. The state then had the present manager of the Ramada Inn testify; however, he was not the manager at the time in question and the hotel's ownership and operation had also changed. The registration records for 1981 were no longer in St. Louis but are now kept at the Ramada Inn's headquarters in Phoenix, Arizona. The state did not introduce the copy of the registration form into evidence at the conclusion of its case-in-chief.

During cross-examination defendant testified that he had filled out the registration papers at Ramada Inn using the alias of William Phillips and a fictitious address. He identified the signature on the copy of the registration form as his own and that the xerox copy of the registration form was the same as the one he had actually signed. He acknowledged that he had been registered in room 105 and had stayed there with a woman. Defendant's objection to this questioning as outside the scope of direct examination was overruled. Upon conclusion of its cross-examination of defendant, the state offered into evidence the xerox copy of the registration form. Defendant again objected on the ground the copy of the registration form violated the best evidence rule.

Defendant surmises that the state did not introduce the exhibit of the registration form into evidence during the state's case-in-chief because of the state's inability, based on the foregoing testimony, to establish a proper foundation under the business record exception. The crux of defendant's complaint is that, since the state had been

unable to lay a proper foundation to admit the registration form during its case-in-chief, the state compelled defendant's testimony about the form in order to have the exhibit admitted as evidence. (In common parlance, what the state could not fit through the front door was slipped in through the back door.)

■ The hearsay objection to the detective's testimony concerning the registration form was properly overruled since the detective merely identified the exhibit as the document he had xeroxed, and not for the truth of its contents. As discussed earlier, the cross-examination concerning the registration form was within the scope of defendant's direct examination to show defendant's residence following his estrangement from his wife. Thus, defendant's criticisms based on hearsay and improper cross-examination are without merit.

■ Defendant's remaining attack on the admission into evidence of the registration form relies on the best evidence rule. However, the copy of the hotel's registration form was not introduced until after cross-examination of defendant. When questioned, defendant acknowledged the writing was his, thereby authenticating the copy. Having testified that he had signed the registration form using an alias, his testimony precluded any prejudice from the admission of the exhibit. There was no need to qualify it under a business records exception to overcome either hearsay or best evidence objections. The evidentiary value of the exhibit following defendant's testimony was merely cumulative. Any error resulting from its admission was harmless.

Defendant's last point challenges the denial of his motion for judgment of acquittal because the evidence showed no more than joint possession and control of the premises searched. He argues that the evidence does not refute the possibility that his female friend, and not he, had exclusive possession and control. Defendant also states that the only evidence connecting him to the controlled substances in the hotel room was his own testimony during cross-examination concerning his personal belongings. Having previously argued the state's cross-examination went beyond the scope of direct, he contends the evidence therein was improperly admitted. We have already addressed defendant's objection to the scope of cross-examination in his second point; we need not reiterate our analysis finding no impropriety in the scope of the state's cross-examination of defendant, and the evidence thereby admitted.

■ Defendant also argues that the evidence linking him to the substances found in a room he shared jointly with his female companion is circumstantial. We agree, but circumstantial evidence is sufficient to support a conviction. To sustain a conviction for possession of a controlled substance, the state must prove that defendant had conscious and intentional possession of the substance, and had knowledge of the presence and nature of the substance. *State v. Barber,* 635 S.W.2d 342, 343[2] (Mo.1982). Both possession and knowledge may be proved by circumstantial evidence. *Id.* [3]. To support a conviction or make a submissible case based on circumstantial evidence, the facts and circumstances must be consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of the defendant's guilt, but also must be inconsistent with every other reasonable hypothesis of innocence. *State v. Brown,* 683 S.W.2d 301, 303[2] (Mo.App.1984). Moreover, the circumstantial evidence need not demonstrate the absolute impossibility of innocence. *State v. Stewart,* 542 S.W.2d 533, 539[20] (Mo.App.1976). Further, while one in exclusive possession of premises may be deemed to be in possession of illicit drugs found therein, if possession is joint with another party, as defendant argues here, there must be some additional evidence to link the defendant with the drugs. *State v. Hall,* 687 S.W.2d 924, 926–27[3] (Mo.App.1985).

■ The factual situation here supplies the necessary additional factors. The defendant was seen leaving the Ramada

parking lot, and at the time of his arrest, had the key to room 105 in his pocket. The defendant, using an alias, filled out the registration form for the hotel room at the Ramada Inn. The hotel's security guard witnessed defendant frequently coming and going into the room. The extensive collection of narcotics and related incriminating drug paraphernalia (over 40 items seized) renders incredible defendant's claim that he was unaware of the presence of the substances. The presence of large quantities of a controlled substance may buttress an inference of possession and control if consistent with the totality of the circumstances. *State v. Barber*, 635 S.W.2d at 344[5] (Mo.1982). The hotel room where the narcotics were found was small, with only a short hallway in its entry leading to the bathroom; the bedroom furnishings were sparse, consisting of one bed and two nightstands. The miscellaneous items including a briefcase, a pair of boots, and watch, identified by defendant as his property, were photographed by the police inches from the narcotics and related paraphernalia seized.

These facts, taken together, are sufficient for a jury to reasonably find that the defendant had knowledge and control, thus establishing his possession of the narcotics. Consequently, we find the trial court did not err in overruling defendant's motion for verdict of acquittal.

Judgment affirmed.

STEPHAN, C.J., and JOHN C. CROW, Special Judge, concur.