STATE of Missouri,
Plaintiff-Respondent,

v.

Gerald B. HODGES,
Defendant-Appellant.

No. 13507.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 16, 1986.

Motion for Rehearing or to Transfer to
Supreme Court Denied Feb. 7, 1986.

Application to Transfer Denied
March 25, 1986.

**586**

Calvin R. Holden, Conklin, Holden, & Wagner, P.C., Springfield, for defendant-appellant.

Gerald B. Hodges, pro se.

William L. Webster, Atty. Gen. Christine M. Szaj, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GREENE, Judge.

Defendant, Gerald Hodges, was jury-convicted of the class A felony of first degree robbery, § 569.020,[1] and thereafter sentenced by the trial court, after a finding that Hodges was a prior offender due to a previous robbery conviction, to 25 years' imprisonment.

The robbery charge filed against Hodges alleged that on or about December 1, 1982, Hodges and a companion knowingly and forcibly stole money and other property which was in the possession of Linda Hartman, and that in the course of the robbery, Hodges displayed and threatened to use a dangerous and deadly weapon.

In support of his appeal, Hodges has filed two briefs, one pro se and the other by his court-appointed counsel. We consider both, as the trial court sustained Hodges' application to proceed pro se with the aid of court-appointed counsel.

We first address the contention raised in counsel's brief that the evidence was insufficient to sustain the conviction.

In determining whether evidence is sufficient to support the verdict, the evidence and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to the state, disregarding all evidence and inferences to the contrary. *State v. Garrett*, 682 S.W.2d 153, 154 (Mo. App.1984).

■ Viewed in such light, the record indicates that on December 1, 1982, at about 10:30 p.m., two black males carrying pistols and wearing scarves wrapped around the lower part of their faces, stocking caps, jeans, jackets and gloves entered the Pizza Hut restaurant located on Battlefield Road in Springfield, Missouri. They demanded that a waitress, Terry Aldrich, take them to her manager, Linda Hartman, who was working at a desk in the rear of the restaurant. Hodges, who was one of the robbers, pointed his pistol in Linda's direction and demanded money. She handed him two bank bags, each of which contained over $300 belonging to Pizza Hut. The robbers obtained additional money from the cash register. Hodges and his companion then forced Linda and Terry to give them their purses, containing their personal effects, and left the restaurant.

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

The bank bags, as well as the ladies' purses and contents, such as driver's licenses, car keys, credit cards, checkbooks and other items were recovered from Hodges' home on December 17, 1982, during a search conducted by Springfield police. At that time, the police also searched the purse of Lillie Scott, a visitor in Hodges' home, and recovered a .38 caliber over-under derringer pistol, which Hartman identified as the gun used by Hodges during the robbery. Both Hartman and Aldrich identified Hodges as one of the robbers. The evidence we have recited was sufficient for the jury to find, beyond a reasonable doubt, that Hodges was guilty of first degree robbery as charged.

In the remaining point in counsel's brief, as well as in the first point of the pro se brief, it is contended that the trial court erred in overruling Hodges' motion to suppress evidence, and in admitting into evidence, over defendant's objection, the bank bags, purses, credit cards, keys, pistol, etc., seized during the search of Hodges' home. In counsel's brief, he claims that the searches during which all of the items complained of were found, with the exception of the pistol, were illegal, as the initial search warrant, whose execution yielded evidence that provided probable cause for the subsequent warrant, was invalid because 1) it was based on "stale" information, 2) there was insufficient information to establish probable cause for the issuance of the warrant, and 3) the warrant was a subterfuge to allow officers to search for evidence of the robbery when they did not have probable cause for such a search. He also argues that the area of Hodges' home which the warrant authorized to be searched was "overly broad."

The facts pertinent to the searches and seizures in question are as follows. The robbery occurred on December 1, 1982. Sergeant Darrell Crick, head of a special police task force, received information that Hodges may have been one of the robbers. He also had learned from an informant that Hodges kept a considerable quantity of marijuana in his home located at 2235 South Ingram Mill Road in Springfield, Missouri.

On December 17, Crick applied to a circuit judge for a warrant to search Hodges' residence for marijuana. The application was accompanied by an affidavit which stated that an informant, who had previously given Crick "several bits of information that has been varified [sic] through investigation," had told Crick about being in Hodges' home on December 12, and seeing "over 40 grams of marijuana" in the living room. The affidavit further stated that several related items of information given Crick by the informant, such as the exact location of Hodges' home, the type of automobile he drove, and the identity of his live-in girl friend, had been investigated by police and found to be accurate. It also stated that the informant had previously given Crick "other drug related information which this officer knows to be true." Based on the affidavit, the judge issued a search warrant authorizing the police to search Hodges' residence for controlled substances. The warrant did not designate a specific area within the home that was to be searched.

Crick and other officers then went to the Hodges residence. Hodges, another male, two females and a child were in the house. The warrant was served on Hodges, and the search commenced. Two "grasshopper" trays containing marijuana and paraphernalia were found in the living room. Pipes and other drug paraphernalia were also found in other locations within the house. Officer Thomas Collins, while searching the kitchen cabinets, found Linda Hartman's driver's license, her J.C. Penney and Montgomery Ward credit cards, and a Ward's credit card belonging to Terry Aldrich. Collins showed Crick the items and the search for drugs was stopped and Officers Tim Medlin and Collins were sent to seek a second warrant to permit the officers to search for articles used in the Pizza Hut armed robbery.

Based on Collins' affidavit relating the discovery of the license and credit cards, the warrant was issued. Here again, no

restrictions were placed on the area within the house which could be searched. A second search was then commenced and the bank bags, the women's purses, Linda's checkbook, keys, and makeup were found in a brown paper sack in the utility room of Hodges' home.

Probable cause for the issuance of a search warrant is determined by the totality of the facts and circumstances alleged in the application for the warrant and its accompanying affidavit. *State v. Gilmore*, 665 S.W.2d 25, 28 (Mo.App.1984). An issuing judge's determination as to what facts and circumstances constitute probable cause in a given case is accorded great deference by the reviewing court. *State v. Pennington*, 642 S.W.2d 646, 648 (Mo. 1982). The constitution only requires that the judge called upon to issue a search warrant make a practical, common sense decision, based on the circumstances set out in the affidavit accompanying the application for the warrant, including the basis of knowledge of those supplying information of those circumstances, that there is a fair probability that contraband, and or other evidence of a crime, will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983).

■■■ When the facts here are reviewed in the light of the principles of *Gates*, it is evident that Hodges' claim of an illegal search and seizure is meritless. Sgt. Crick's informant told him he had been in Hodges' home on December 12, and had observed "over 40 grams" of marijuana in the living room. Possession of more than 35 grams of marijuana is a felony. *See* § 195.200, RSMo Supp.1984. There was probable cause to believe, from the quantity involved, that marijuana would still be in Hodges' home five days after it had been seen there by the informant. In *U.S. v. Golay*, 502 F.2d 182, 187 n. 10 (8th Cir. 1974), it was held that information in an affidavit that an informant had seen stolen diamonds in defendant's hotel room 16 days prior to the day the search warrant issued was not too stale to support a finding of

probable cause for issuance of the warrant to search the room. The claim that the information contained in Crick's affidavit was insufficient to support a finding of probable cause has no basis in fact or law. The facts and circumstances alleged in the affidavit provided the judge with reasonable grounds for making a finding of probable cause.

■■ The claim of subterfuge is also groundless. Although Crick, because of his duties on the task force, had knowledge of the Pizza Hut robbery, and knew that Hodges was a possible suspect, he stated at the motion to suppress hearing that he did not tell the officers to look for any specific articles connected with the robbery, and to stop searching the house if they saw anything they thought was related to the robbery.

Officer Collins, by virtue of the warrant allowing the officers to search for marijuana, had the right to look in the kitchen cabinets. The fact that robbery evidence was found there was incidental, and is not evidence of a pretextual search. The case of *State v. Kelsey*, 592 S.W.2d 509 (Mo. App.1979), cited by Hodges as his authority for declaring the search illegal, is distinguishable on its facts. All constitutional and statutory requirements for the issuance of a search warrant were met in this case.

■■ Although defendant's counsel, in his argument portion of his brief, contends the seizure of the .38 caliber derringer from Lillie Scott's purse was illegal, he does not explain why; neither does Hodges in his pro se brief. Hodges has no standing to complain about the search of Scott and her purse, and the seizure of the pistol.

In his pro se brief, Hodges argues that the admission of the pistol as evidence was error because there was nothing "connecting the weapon to the appellant."

■■ In her testimony, Linda described the pistol used by Hodges in the holdup as "a little gun that would fit in the palm of your hand. It was shiny colored ...." When handed the pistol taken from Lillie

Scott's purse, Linda said it was "[t]he gun that he (meaning Hodges) had in his hand" during the robbery. Her testimony was sufficient to tie the weapon to Hodges.

Hodges' next argument concerns the initial search during which the driver's license and credit cards were found. He claims the area where those items were found (kitchen cabinet) "exceeded the reasonable bounds of the warrant." This argument is based on the premise that, since the affidavit stated the informant saw marijuana in the living room, the scope of the search was confined to that area.

■ The warrant issued permitted officers to search "2235 S. Ingram Mill a frame house light brown in color ...." As is easily seen, the warrant did not restrict the search to the living room. The search of the kitchen was within the scope of the warrant. *State v. Stevenson*, 589 S.W.2d 44, 47 (Mo.App.1979).

Hodges next claims that because the second warrant directed officers to search for caps, gloves, scarves, windbreakers, jackets and chrome or nickel plated revolvers, the police were limited to a seizure of those articles only, if found, and, therefore, the seizure of the bank bags, purses, checkbook and other items owned by the two robbery victims was illegal.

In the course of conducting a search pursuant to a valid warrant, police may seize property not described in the warrant as long as 1) such property is discovered in plain view in a place where they are entitled to look, 2) the discovery of the property is inadvertent and not preplanned, and 3) when they first see the property, they immediately conclude that it is evidence of a crime. *State v. Clark*, 592 S.W.2d 709, 713 (Mo. banc 1979), cert. denied, 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 57 (1980).

■ The record clearly establishes that police officers, while looking for the clothing and guns described in the warrant, found a large paper sack in the utility room. They had a right to look in the sack. *State v. Abbott*, 664 S.W.2d 537, 542 (Mo. App.1983). Upon doing so, they found the bank bags, purses, and other items not described in the warrant, but related to the robbery. Where, in the process of searching an area for objects described in a warrant, officers discover other property identifiable with the crime being investigated, they may seize such articles, even though they are not described in the warrant. *Golay*, supra, 502 F.2d at 184. The discovery of the items was inadvertent as the police did not know what was in the sack. *State v. Preston*, 583 S.W.2d 577, 581 (Mo.App. 1979). Finally, the police knew immediately upon discovering the contents of the sack that they were related to a crime they were investigating. The requirements of *Clark* and its federal counterparts, such as *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), were met in the search and seizure in question.

■ Hodges' next point relied on is that the trial court committed plain error when it "failed to correct and investigate" alleged discrepancies in the testimony of Linda Hartman, given at the preliminary hearing and at trial, as to whether she had seen a picture of a photographic lineup containing Hodges before she identified him as one of the robbers.

No legal authority is cited in support of this assignment of error, and we do not know of any rule of law requiring a trial judge to "correct and investigate" inconsistencies in the testimony of a witness. Credibility of a witness is for the jury to decide, and it is the duty of the parties to bring matters affecting credibility to the attention of the trier of fact.

In his final point relied on, Hodges alleges the trial court erred in permitting the prosecuting attorney, immediately prior to the commencement of trial, to take a picture of him seated with two other black males, for the avowed purpose of replacing a "lost" photograph of a lineup display from which Linda had originally identified Hodges as one of the robbers, so that the record would be complete if the lineup photograph was discussed.

Hodges did not object at trial to the taking of the photograph, or its use in evidence. The alleged error was not preserved for appellate review. Plain error review of the complaint is not justified, as we fail to see how Hodges was prejudiced by the taking of the picture, or its use in evidence.

We find no trial court error, plain or otherwise, on account of any ruling or action made during the course of disposition of this cause.

Judgment and sentence affirmed.

TITUS, P.J., and FLANIGAN, J., concur.