STATE of Missouri, Respondent,

v.

Richard KELLER, Appellant.

No. WD 46747.

Missouri Court of Appeals,
Western District.

Feb. 15, 1994.

Lee M. Nation, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Richard Keller appeals his conviction for possession of a controlled substance with intent to distribute, section 195.211, RSMo Cum.Supp.1992. He was sentenced to ten years in the custody of the Missouri Department of Corrections. Mr. Keller claims that (1) the trial court erred in overruling his motion to suppress physical evidence, contending that the search warrant issued authorizing law enforcement officers to search his motel room was unsupported by probable cause, and (2) insufficient evidence was presented to support the court's finding of guilt in the jury-waived case. The judgment of conviction is affirmed.

Richard Keller registered at the Court Yard by Marriott Hotel in Platte County on January 5, 1992, and occupied room 156. Mr. Keller also rented a safe deposit box within the hotel. While residing in room 156, Mr. Keller refused maid service, entertained a number of visitors briefly, and made several telephone calls. Mr. Keller paid cash for the room when he checked out on January 6, 1992.

On January 7, 1992, the hotel manager was called to room 156 by a hotel employee who was cleaning the room following Mr. Keller's departure. The hotel manager went to room 156 and observed syringes in the waste can, a white powder residue on the bathroom vanity and floor, and razor marks on the vanity. After locking the room, the hotel manager telephoned the Platte County Sheriff's Department.

Two detectives of the Platte County Sheriff's Department responded to the hotel manager's telephone call and were taken to hotel room 156. The law enforcement officers observed a white residue on the writing desk, in the writing desk drawer, on the night stand, in the drawer of the nightstand, and in the bathroom. They also observed a hypodermic syringe in the waste can. One of the law enforcement officers tested the powder observed in the room, and the test indicated the presence of cocaine. The law enforcement officers recovered the powder found in the room along with a syringe. The officers took photocopies of the registration card and the safety deposit box signature card, both signed by Mr. Keller.

Richard Keller returned to the hotel on January 10, 1992. Mr. Keller requested room 156, was assigned the room, and rented the same safety deposit box that he had rented on January 5, 1992. The hotel manager notified one of the Platte County Sheriff's Deputies who had been at the hotel to view room 156 on January 5, 1993.

On January 11, 1992, at approximately 12:18 a.m., a search warrant to search hotel room 156 was obtained from a Platte County Associate Circuit Judge. The law enforcement officer who obtained the search warrant, and several other law enforcement officers, executed the warrant at approximately 1:10 a.m. on the same date. When the law enforcement officers entered room 156, they observed Mr. Keller and a second man, Marco Cortez–Figueroa. Mr. Keller ran into the bathroom area as Mr. Cortez–Figueroa ran toward the sliding glass doors on one side of the room. Both individuals were subdued by law enforcement officers.

After the two occupants were under control, the law enforcement officers searched the room. A Crown Royal bag, which was located on a bottom shelf of a nightstand located between the two beds in the room, contained 83.42 grams of cocaine, having a street value of $16,000. A syringe was observed on top of the bathroom sink. A metal pipe containing cocaine was observed on top of the nightstand between the beds. A plastic bag containing .56 grams of cocaine was found in a drawer of the nightstand. A torn Coca Cola can containing heroine residue was found in the nightstand drawer. A bag with a QuikTrip logo on it and containing Arm & Hammer Baking Soda was also found in the room. A blue shaving kit found on the bottom shelf of the nightstand contained several small gram baggies, one of which contained a powder residue. $1,400 was discov-

ered in the safety deposit box assigned to Mr. Keller. All of the items were seized.

On March 6, 1992, Mr. Keller was charged with possession of a controlled substance with intent to distribute in violation of section 195.211, RSMo Supp.1991. Pursuant to Mr. Keller's motion to suppress the physical evidence found in hotel room 156, the trial court conducted a hearing and denied the motion to suppress. Mr. Keller waived his right to a jury trial, the parties stipulated that the evidence adduced at the suppression hearing would be the same at trial, and, therefore, the parties rested on the evidence presented at the suppression hearing. The trial court found Mr. Keller guilty of possession of a controlled substance with intent to distribute and overruled Mr. Keller's motion for a new trial. Mr. Keller was sentenced to ten years confinement, and he appealed his conviction.

## I.

Mr. Keller claims as his first point on appeal that the search warrant issued on January 11, 1992, was unsupported by probable cause. Mr. Keller asserts that the facts articulated in the complaint and affidavit filed on January 11 stated facts that occurred on January 5 and 6 and, therefore, because of the lapse of time did not state probable cause to support the January 11 search.

Search warrants may issue only when probable cause supporting issuance of a warrant is demonstrated. U.S. Const. amend. IV; Mo. Const. art. I, § 15; *State v. Miller*, 815 S.W.2d 28, 31 (Mo.App.1991). Probable cause is determined by a judicial officer, from the complaint and supporting affidavits filed by the law enforcement officer seeking the search warrant. *State v. Pennington*, 642 S.W.2d 646, 648 (Mo. banc 1982).

Great deference should be given to a judicial officer's determination of probable cause, and a trial court's finding should only be reversed upon a clear showing of abuse of discretion and clear error. *Miller*, 815 S.W.2d at 32 (citing *State v. Holland*, 781 S.W.2d 808, 812 (Mo.App.1989), and *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990)). A finding of probable cause necessary for a warrant requires more than mere suspicion. *Spinelli v. United States*, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). Only the probability of criminal activity, not the prima facie showing, is the standard of probable cause. *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). "If there is a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. at 2331.

Mr. Keller argues that there was no probable cause to issue a warrant at the time it was executed. He asserts that whatever probable cause may have existed for the search of room 156 on January 7 did not exist on January 11. The affidavit in this case states:

That on January 7, 1992, I [Detective Paul Carrill] was informed by employees of the Courtyard Marriott Inn ... that a room at that hotel was discovered to contain syringes, and visible white powder in the bathroom area after the Guests renting that room had checked out. The room was Number 156 and was registered in the name of Richard Keller. On that date I processed the room and discovered that the white powder tested positive for the presence of cocaine. Mr. Keller paid cash for his room and refused maid service and had food delivered to the room during his stay, which was from January 4, 1992, to January 7, 1992. He had placed an item in the hotel safety deposit box during his stay and made a large number of telephone calls and received a number of visitors during his stay.

That on January 10, 1992, I was informed that the same man ... had returned and had rented the same room, under the same name. He also placed an envelope in the safety deposit boxes .... The safety deposit box number is 106.

From this affidavit, the issuing judge found probable cause to issue a search warrant.

Mr. Keller contends that the information taken from the affidavit was stale and could not be used in issuing the January 11th warrant. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances

set forth in the affidavit ... there is a fair probability that contraband ... will be found in a particular place." *State v. Dudley*, 819 S.W.2d 51, 53 (Mo.App.1991) (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332). *United States v. Golay*, 502 F.2d 182, 187 n. 10 (8th Cir.1974), held that information in an affidavit that an informant had seen stolen diamonds in the defendant's hotel room 16 days prior to the day the search warrant was issued was not too stale to support a finding of probable cause for issuance of the warrant to search the room. *Id.* Probable cause necessary to issue a search warrant is determined by the "totality of the facts and circumstances alleged in the application for the warrant and its accompanying affidavit." *State v. Hodges*, 705 S.W.2d 585, 588 (Mo.App.1986).

In *Hodges*, the court found "[t]here was probable cause to believe, from the quantity involved, that marijuana would still be in Hodges' home five days after it had been seen there by the informant." *Id.* In this case, the detective saw evidence of drug possession, seized drug paraphernalia and became aware of circumstances common to drug distribution on January 7. On January 10 he was informed that Mr. Keller had returned to the room and the warrant was obtained in the early morning hours of January 11.

Looking at the totality of the circumstances as applied to this case, cocaine residue was found in room 156 when it was cleaned after Mr. Keller checked out, and Mr. Keller refused maid service, had a number of short term visitors, and made several telephone calls. Additionally, room 156 contained syringes and razor marks were found on the vanity.[1] When he returned to the hotel on January 10, Mr. Keller requested the same room and rented the same safety deposit box. "[T]he business of dealing in illegal drugs is ordinarily a regenerating activity." *Davidson v. State*, 54 Md.App. 323, 458 A.2d 875, 880 (1983). The information included in the affidavit came from two reli-

able sources, a hotel manager and Detective Carrill, the creditability of these sources is not an issue.

The information supporting the affidavits was not stale and, applying the information to the totality of the circumstances, the judicial officer's decision finding probable cause to issue the search warrant was practical. Point one is denied.

## II.

Mr. Keller asserts in his second point on appeal that the trial court erred in overruling his motion for acquittal at the close of all the evidence and that he should have been discharged. He specifically contends there was insufficient evidence to prove he was in possession, actual or constructive, of the contraband.

"Appellate courts, reviewing the evidence for sufficiency, do not weigh the evidence, but rather determine whether there was sufficient evidence from which a reasonable person could conclude that the defendant is guilty as charged." *State v. Cortez–Figueroa*, 855 S.W.2d 431, 440 (Mo.App.1993).[2] "In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored." *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992); *State v. Counts*, 782 S.W.2d 829 (Mo.App.1990); *State v. Spraggins*, 839 S.W.2d 599, 603 (Mo.App.1992).

The search revealed a "Crown Royal" bag and a shaving kit, both containing cocaine. The "Crown Royal" bag contained three zip-loc bags containing 83.42 grams of uncut cocaine. Also seized from the room on January 11 were: a set of scales with cocaine residue on it; numerous small zip-loc bags; a hypodermic syringe found on the bathroom vanity; a metal pipe containing cocaine residue; a zip-loc bag containing .56 grams of cocaine; a glass pipe containing cocaine resi-

1. A razor is frequently used to divide cocaine and separate in preparation for its use and to "cut it" by diluting it with other substances.

2. The *Cortez–Figueroa* case is an appeal by Mr. Keller's companion in room 156 the early morning of January 11, 1993, and arises from the same circumstances.

due; a glass vial containing cocaine residue; a torn coke can with heroin residue; and a QuikTrip bag containing Arm & Hammer baking soda.[3]

To sustain a conviction for possession of a controlled substance, courts look for two elements. "The state must prove 1) conscious and intentional possession of the substance, either actual or constructive, and 2) awareness of the presence and nature of the substance." *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). Knowledge and awareness can be proved by circumstantial evidence. *Id.* Actual physical possession of the controlled substance need not be shown in order to establish the element of possession. *State v. Johnson*, 811 S.W.2d 411, 413 (Mo. App.1991).

Mr. Keller and Mr. Cortez–Figueroa were in joint control of room 156. When drugs are found in an area of joint possession, a defendant's access to the area in which drugs were found is an incriminating fact which is not destroyed by the fact that another also had access to the area. *State v. Adkins*, 800 S.W.2d 28, 30 (Mo.App.1990). The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that they were under his control. *Purlee*, 839 S.W.2d at 588.

When several defendants are in joint possession of an area, additional evidence which may be sufficient to connect a defendant to cocaine includes 1) routine access to an area where controlled substances are kept, 2) the presence of large quantities of a controlled substance at the place the accused was arrested, 3) conduct and statements made by the defendant, *State v. Thomas*, 737 S.W.2d 247, 249–50 (Mo.App.1987); and 4) mixture of personal belongings with the substance, *Johnson*, 811 S.W.2d at 414; *State v. Caldwell*, 698 S.W.2d 566, 574 (Mo.App.1985). A defendant's flight or attempt to evade capture upon realizing the presence of police can link the defendant to drugs. *Johnson*, 811 S.W.2d at 414 (citing *State v. Kerfoot*, 675 S.W.2d 658, 662 (Mo.App.1984)).

Facts in the current case support the trial court's finding that Mr. Keller was in at least constructive possession of the contraband. Mr. Keller had access to the area where the cocaine and drug paraphernalia was found. The hotel room from which the goods were seized was registered in his name. He was present in the room at the time of the raid. The items seized were all in common areas, either in plain view or easily obtainable.

"The presence of large quantities of a controlled substance may buttress an inference of possession and control if consistent with the totality of the circumstances." *Caldwell*, 698 S.W.2d at 574. "Evidence as to the value of drugs a defendant is charged with possessing is relevant to show that a defendant knowingly and intentionally possessed the drugs." *State v. Mack*, 793 S.W.2d 362, 366 (Mo.App.1990). The amount held in the room was not typical of that used for personal consumption but was typical of that used for selling drugs. The police seized approximately 87 grams of cocaine which had a street value of about $16,000. Furthermore, scales, baking soda and gram baggies, items commonly used in distribution of narcotics, were found in room 156, many in plain view, and $1,400.00 was found in the safety deposit box. "The extensive collection of narcotics and related incriminating drug paraphernalia ... renders incredible defendant's claim that he was unaware of the presence of the substances." *Caldwell*, 698 S.W.2d at 574.

Mr. Keller's conduct when the police executed the warrant also suggests knowledge and awareness of the presence of illegal drugs and paraphernalia. When the police entered room 156, Keller ran into the bathroom area. The other man in the room, Mr. Cortez–Figueroa, ran toward the sliding glass doors on one side of the room.

Sufficient evidence was presented to support Mr. Keller's conviction. Point two is denied.

Mr. Keller's conviction is affirmed.

All concur.

---

3. Baking soda is commonly used to dilute or "cut" cocaine.