

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD86334 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | September 24, 2024 |
| | ) | |
| CORTEZ CAVE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Callaway County, Missouri**
**The Honorable Joshua C. Devine, Judge**

**Before Division One:** Edward R. Ardini, Jr., Presiding Judge
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Mr. Cortez Cave ("Cave") appeals from the Circuit Court of Callaway County, Missouri ("trial court")'s judgment after jury trial, convicting him of drug trafficking in the second degree and possession of drug paraphernalia with intent to use. On appeal, he challenges the sufficiency of the evidence supporting his convictions. We affirm.

## Factual Background[1]

Cave was charged with the class B felony of trafficking in the second degree for knowingly possessing twenty-four grams or more of a mixture or substance containing cocaine base, a violation of section 579.068[2] (Count I); and the class A misdemeanor of possession of drug paraphernalia with intent to use, a violation of section 579.074 (Count II). The evidence adduced at trial, viewed in the light most favorable to the verdict, was as follows:

At approximately 3:30 p.m. on November 5, 2021, an investigator ("Investigator") with the Callaway County Sherriff's Office ("Sherriff's Office") began surveilling Cave's home, located at 1410 Westminster Avenue in Fulton, Missouri ("the Home"), based on information received regarding possible drug activity.

From his vehicle, Investigator[3] observed a white Tahoe SUV pull into the driveway of the Home. Cave exited the Tahoe and walked up the driveway of the neighboring property located at 1412 Westminster Avenue ("Neighboring Property"), which appeared to be vacant. Cave walked under the carport behind the Neighboring Property, out of Investigator's view, and returned to the Tahoe a few minutes later. Cave left in the Tahoe and returned sometime later, exited the Tahoe, walked behind the

---

[1] On appeal from a jury-tried case, the appellate court views the facts in the light most favorable to the jury's verdict. *State v. Carter*, 523 S.W.3d 590, 593 n.1 (Mo. App. W.D. 2017).

[2] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through November 5, 2021, unless otherwise indicated.

[3] Pursuant to the directive of section 509.520 (RSMo Supp. III 2023), we do not provide the names of any non-party witnesses in this opinion.

driveway of the Neighboring Property for a few minutes, returned to the Tahoe, and drove off again. Investigator did not observe any other individuals at the Neighboring Property or the Home. Each time Cave returned to the Tahoe, he carried nothing apart from a cell phone.

After Cave's third trip to the Neighboring Property within one hour, Investigator called dispatch, who put him in contact with the owner of the Neighboring Property ("Owner"). Investigator asked Owner if Cave was allowed to be on Owner's property to which Owner responded, "absolutely not." Owner advised he would assist in prosecuting Cave for trespassing. Investigator then contacted the Fulton Police Department and asked a deputy ("Deputy") for assistance with a trespass investigation.

At approximately 5:00 p.m. Cave returned in the Tahoe and again walked to the back of the Neighboring Property. Investigator informed Deputy and a police sergeant ("Sergeant") that Cave had returned, and Deputy and Sergeant responded to the scene. Deputy exited his vehicle equipped with a body camera and proceeded up the driveway of the Neighboring Property. Deputy observed a person emerge from around the back corner of the Neighboring Property. Deputy called to the person, who identified himself as Cave.

Deputy handcuffed Cave, read Cave his *Miranda* rights, and took Cave to his patrol car. Deputy asked Cave why he was trespassing on the Neighboring Property and Cave told Deputy he was retrieving a basketball that bounced out of his yard. Deputy told Cave he did not see a basketball or a basketball goal. Cave then changed his story

3

and said he was retrieving a football. Deputy likewise did not see a football in either yard.

After Cave was detained for trespassing, Deputy conducted a pat-down of Cave's person. The pat-down did not reveal any drugs but did reveal $949 in cash despite Cave also indicating he was unemployed.

Meanwhile, Sergeant found a digital scale, a bag containing a white substance, and plastic bags on the ground of the Neighboring Property's backyard. These items were found in plain view by the corner of the backyard where Cave had been standing. Investigator rounded the corner of the Neighboring Property and also observed the scale in plain view. A bag containing a "white soap-like" substance was sitting on top of a digital scale, which was turned on. An empty plastic bag was sitting beside the scale. Investigator suspected the white substance to be crack cocaine.

The field weight of the bag containing the white substance, which Investigator explained is not as precise as lab testing performed by a criminologist, was approximately forty-two grams. Investigator explained this is significantly more than a user's amount of crack cocaine, which according to Investigator, is typically between a half gram and a gram. A half gram of cocaine was worth approximately $50, making the total value of the crack cocaine approximately $4,200. A criminologist later confirmed the white substance was cocaine and weighed the bag, finding it contained 36.38 grams of cocaine. Investigator also tested the scale and noted that it would turn off automatically after 5-10 minutes of inactivity.

Investigator asked Cave about the drugs at the scene. Cave denied the drugs were his. When Investigator confronted him with the information that he had seen Cave go behind the Neighboring Property four times, Cave stated that every time had been to retrieve his son's football. Yet, when Deputy first approached Cave, he observed no football in Cave's hand or in the vicinity. Officers checked the Neighboring Property for other individuals, but the Neighboring Property was vacant and secured.

Cave was also interviewed by a lieutenant at the Sherriff's Office ("Lieutenant"). Lieutenant asked Cave about the $949 found in his pocket, but Cave did not address the question and instead stated that he had a bank card that he used to purchase a football. Lieutenant asked Cave if he had hidden drugs in the Neighboring Property in the past, and Cave stated that he had done so a "long time ago." Lieutenant asked Cave if the drugs found on the Neighboring Property were his, and Cave responded, "Right. I don't know."

After a one-day jury trial on April 26, 2023, the jury found Cave guilty on both counts. Cave filed a motion for a Judgment of Acquittal Notwithstanding the Verdict, which was denied by the trial court. Based on a finding that Cave was a prior and persistent offender, the trial court entered a judgment sentencing Cave to twelve years' imprisonment on Count I and one year on Count II.

Cave timely appealed, asserting two sufficiency-of-the-evidence points on appeal. Because both points involve the same substantial evidence supporting Cave's convictions, we take them up together.[4]

## Standard of Review

> When reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, we do not re-weigh the evidence. Instead, we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences.

*State v. Gehring*, 599 S.W.3d 526, 529 (Mo. App. W.D. 2020) (internal quotation marks and citations omitted) (quoting *State v. Martin*, 575 S.W.3d 764, 767 (Mo. App. W.D. 2019)). "The assessment is not whether this Court believes that the evidence established guilt beyond a reasonable doubt but, rather, whether, in light of the evidence most favorable to the verdict, any rational fact-finder could have found guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *Martin*, 575 S.W.3d at 767).

## Analysis

Cave argues the trial court erred in convicting him on Counts I and II because insufficient evidence was presented to establish his possession of the controlled substance and drug paraphernalia. We disagree.

As to Count I:

---

[4] In his initial brief, Cave raised a third point on appeal. However, Cave subsequently filed a waiver notifying this court of his intent to proceed solely on his first and second points on appeal.

6

At the time of Cave's 2021 crimes, a person commits the offense of trafficking drugs in the second degree if such person knowingly possesses or has under his control more than eight grams of a mixture or substance which contains cocaine base. § 579.068.1(3). The offense of trafficking drugs in the second degree is a class B felony if the defendant knowingly possesses or had under his control more than twenty-four grams of a mixture or substance which contains cocaine base. § 579.068.3(3).

As to Count II:

> A person commits the offense of unlawful possession of drug paraphernalia if he or she knowingly uses, or possesses with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body, a controlled substance or an imitation controlled substance in violation of this chapter or chapter 195.

§ 579.074.1

Under chapters 195 and 579, "[p]ossessed" or "possessing a controlled substance" is statutorily defined as:

> [A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his or her person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

§ 195.010(38); *see also* § 556.061(38) (similar definition of "[p]ossess" or "possessed" for the entire criminal code).

This Court applies the same analysis when reviewing whether a defendant possessed a controlled substance as we do in reviewing whether a defendant possessed drug paraphernalia. *State v. Glaze*, 611 S.W.3d 789, 794-95 (Mo. App. W.D. 2020). Thus, to prove the possession offenses charged against Cave, the State was required to show "(1) conscious and intentional possession of [the controlled substance and paraphernalia], either actual or constructive, and (2) awareness of the presence and nature of the controlled substance [and paraphernalia]." *Gehring*, 599 S.W.3d at 529 (alterations in original); *see also State v. Brown*, 661 S.W.3d 27, 36 (Mo. App. S.D. 2023) (applying the "same rules" to drug trafficking under section 579.068).

These prongs do not operate "entirely independent" of each other. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). "Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id*. Incriminating facts that buttress such an inference include: finding a large quantity of drugs, finding drugs with a large monetary value, a defendant's access to the drugs, false statements made by the defendant in an attempt to deceive the police, the presence of drugs in plain view, and other behaviors by the defendant such as nervousness during questioning or flight. *State v. Woods*, 284 S.W.3d 630, 640 (Mo. App. W.D. 2009).

Here, ample evidence supports a finding that Cave had constructive possession over the drugs and scale. First and foremost, Cave clearly had access to the drugs. Over thirty-six grams of a substance containing cocaine base and a scale were found in plain view in the backyard of the abandoned Neighboring Property. Investigator's

uninterrupted surveillance on the afternoon of November 5, 2021, detailed Cave entering and exiting that exact location four times within an hour-and-a-half period. During that time, Cave was the only individual observed coming and going from the Neighboring Property. Cave was also the only individual observed at the Neighboring Property when Deputy approached to conduct his trespass arrest and inquiry. Cave's frequent access, coupled with the large quantity of drugs, is indicative of "conscious possession." *State v. Hernandez*, 880 S.W.2d 336, 339 (Mo. App. W.D. 1994).

Further, a high monetary value of allegedly possessed drugs is relevant for showing that a defendant knowingly possessed the same. *State v. Jackson*, 419 S.W.3d 850, 856 (Mo. App. S.D. 2013) (citing *State v. Keller*, 870 S.W.2d 255, 260 (Mo. App. W.D. 1994)). The crack cocaine in question was worth at least $3,600. This amount was not typical of personal consumption, which Investigator testified was between one half gram and one gram valued at $50 to $100. The amount and value of the crack cocaine was, however, typical of trafficking. *Id.* (holding that twenty-two grams of crack cocaine valued at $4,400 was typical of drug trafficking).

The fact that the scale was found alongside the drugs also buttresses an inference that Cave knowingly possessed the drugs and scale. *Id.* (holding that the collective presence of crack cocaine and a scale rendered the defendant's story that he was unaware of the presence of the drugs "incredible"). Upon entering the backyard, Investigator observed a bag of crack cocaine on the scale, which was turned on. Considering that the scale has a short shutoff period (i.e. 5-10 minutes) and that Cave was the only person seen entering the backyard, it was reasonable for the jury to infer that Cave not only

knew about the scale and drugs, but was *using* the scale to weigh the drugs for distribution at the time of his arrest.

Finally, Cave was not forthcoming with law enforcement. A defendant's dishonesty about a material fact can be considered by a factfinder as affirmative evidence of guilt. *Woods*, 284 S.W.3d at 641-42.

Here, not only was Cave unable to credibly explain how he came to possess nearly a thousand dollars in cash while unemployed, but his story about why he was going into the backyard of the Neighboring Property was a moving target. He first told Deputy he was going to retrieve a basketball, but when Deputy confronted Cave about the absence of a basketball goal, Cave stated he was retrieving a football. When Deputy pointed out there was no football in his hands, Cave claimed he threw the football. The jury could have viewed these inconsistent statements as dishonest, especially because Investigator never once observed Cave with a ball in his hands during his many trips from the Neighboring Property to the Tahoe. Nor did he observe any football or children at the Neighboring Property or the Home.

And, when Cave was interviewed by Lieutenant, he admitted to hiding drugs at the Neighboring Property in the past. Given this admission, the jury could have viewed his statements that he was not *currently* hiding drugs *in the exact same place* as dishonest and an attempt by Cave to distance himself from the drugs and scale.

Contrary to this overwhelming evidence of guilt, Cave posits that because Investigator never had a clear view of the backyard, someone else could have been in the backyard and "jumped the fence" upon hearing the police coming. This argument

10

ignores our standard of review, which requires us to consider only inferences supportive of a defendant's guilt even when other equally valid inferences can be drawn. *State v. Anderson*, 653 S.W.3d 677, 682 (Mo. App. W.D. 2022).

Cave's argument that his convictions cannot stand because of evidence that was *not* present at the scene (i.e. lack of fingerprints on the scale, no personal belongings, no paraphernalia on his person) is similarly dismissive of our standard. Our job is not to reweigh evidence, but rather, to determine if a reasonable juror could find Cave guilty beyond a reasonable doubt *based on the evidence presented at trial*. *Glaze*, 611 S.W.3d at 794.

As discussed herein, there was a plethora of incriminating facts presented at trial upon which a reasonable juror could infer that Cave had conscious constructive possession over the crack cocaine and scale found in the backyard of the Neighboring Property and that he was aware of their presence and nature.

Points I and II are denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and Cynthia L. Martin, Judge, concur.

11